(R.D. 11417)

N. M. ALBERT CO., INC., ET AL. *v.* UNITED STATES

(Decided December 5, 1967)

*Sharretts, Paley, Carter & Blauvelt* (*Howard Clare Carter* of counsel) for the plaintiffs.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Morris Braverman* and *Owen J. Rader*, trial attorneys), for the defendant.

WILSON, Judge: The following enumerated appeals for reappraisement were consolidated for trial: R65/16410; R65/16428;

R65/16421; R65/16422; R65/17313; R65/15624; R65/17316; and R65/17318.

The imported merchandise consists of certain phonograph records which were manufactured and exported on and between August 30, 1961, and March 19, 1964, by RCA Victor Mexicana, S.A. de C.V. (hereinafter referred to RCAVM) of Mexico City, Mexico.

Counsel agree that the imported merchandise is not on the final list promulgated by the Secretary of the Treasury in 93 Treas. Dec. 14, T.D. 54521, and that constructed value, as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, is the proper basis for determining the value for said merchandise.

The appraised values are higher than the invoiced and entered values. Plaintiffs contend for values equal to, and in some instances for values less than, the invoiced and entered values, and that they have established by uncontradicted evidence the true constructed value for the merchandise. The defendant contends that plaintiffs have (1) failed to prove that the appraised values are erroneous, and (2) failed to establish by substantial evidence that the entered or claimed values represent the constructed values.

Section 402(d), as amended, *supra*, is as follows:

(d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

The evidence consists of seven numbered documentary exhibits offered by plaintiffs, and exhibit A offered by the defendant. There is no oral testimony.

Plaintiffs' exhibit 1 is the affidavit of Juan Maldonado Aceves, sworn to before the American Consul at Mexico City on November 10, 1966,

who alleges that he is "cost accountant" of RCAVM and has been associated with that company for 9 years; that the company manufactures and produces phonograph records which are sold in Mexico and are exported to many countries including the United States; that throughout his experience with the company he has been—

* * * thoroughly familiar with the costs of materials, fabrication, artists and composers' costs, usual general expenses, cost of packing and the amount of profit realized by my company in all of its sales. The books of the company are kept under my personal supervision and I know them to be correct. In the ordinary course of business we produce a record within one week of the receipt of an order.

He then asserts that from June 15, 1961, to March 31, 1966, "the records of my company show that the following costs in Mexican Pesos were incurred in producing the respective records."

The affiant separately lists for each year commencing with 1961 to and including 1966, the respective costs in Mexican pesos according to size and series of the records for "Material; Labor; Recording Cost; Artist & Composer Royalty Cost; Total Materials and Fabrication; Manufacturing Overhead; Administrative Overhead; Total Usual General Expenses; All Coverings and Containers; Profit; Total Constructed Value in Mex. Ps.; Total Constructed Value in U.S. Dollars at Official Rate of Exchange." (12.50 Mexican pesos equals one U.S. dollar.)

In addition to the foregoing, exhibit 1 also states the total number of phonograph records exported directly to the United States, including Puerto Rico, during the years 1961 through March 31, 1966. For the years involved herein, the quantity of records so exported is stated, *infra*.

The affiant also alleges sales to Sr. Jose Antonio Hutt for exportation to Ansonia Records, Inc., of New York, or to International Distributors of Tucson, Arizona, which are identical to those shipped directly, but neither price, dates of shipment, size nor series, nor quantities are stated.

Plaintiffs' exhibit 2 corrects a typographical error in exhibit 1, page 3, to read "MLV" instead of "MVL."

Plantiffs' exhibits 3, 4, 5, and 6 are either excerpts from publications, or a book, issued by the U.S. Department of Commerce, Bureau of Census, entitled "FT110" or "United States Imports of Merchandise for Consumption, Commodity by Country of Origin," "Compiled from import entries on which the information used in this report has been verified by Customs Examiners." Exhibit 6 is entitled "Tariff Schedules Annotated by Country" "U.S. Imports for consumption & general imports 1964." So far as pertinent herein, these documents state the

total number of phonograph records imported from Mexico (the names of Mexican exporters are not shown) as follows:

| Exhibit No. | Report-ing No. | Page | Year | Quantity | Quantity stated in ex. 1 (Exported by RCAVM) |
|---|---|---|---|---|---|
| 3 (excerpt) | 9262200 | 181 | 1961 | 503614 | 353285 |
| 4 " | 9262200 | 219 | 1962 | 631052 | 474930 |
| 5 " | 9262200 | 408 | 1963* | 266677 (A) | – |
| 5 (book) | 7242500 | 409 | 1963* | 105897 (B) | 300052 |
| 6 (excerpt) | 7242500 | – | 1964 | 459216 | |

*(A) to September 1, 1963.
*(B) September 1, 1963, to December 31, 1963. The reporting numbers were changed during 1963 when the Tariff Schedules of the United States (TSUS) were adopted.

Accordingly, the differences in exportations between the foregoing figures for respective periods were exported from Mexico by producers *other than* RCAVM.

Plaintiffs' counsel stated (R. 8, 9) "In order to try to carry the plaintiffs' burden of establishing the usual general expenses and profits of manufacturers in the country of origin * * * I wrote to other manufacturers in Mexico to try to ascertain their profits. I sent four letters, and I have return receipts for each of them, and received one answer." Counsel for defendant did not concede they were the only manufacturers in Mexico (R.9). Counsel for plaintiffs then offered collective exhibit 7 consisting of copies of letters, all dated April 21, 1966, addressed to Orfeon Videovox, S.A.; Pan Americana De Discos, S.A.; Discos CBS, S.A., and Louis Couttolenc, Jr., RCA Victor Mexicana, S.A. de C.V. (the involved exporter), all of Mexico, D.F. With the latter letter counsel enclosed a letter addressed to Discos Columbia de Mexico, S.A. (no address being indicated).

The letter to Couttolenc, Jr., refers in part to *his* "telex dated April 14, 1966 to Mr. Dalto *wherein you list the companies of importance* who may have exported Mexican phonograph records to the United States." [Emphasis supplied.] The letters to the other named firms request information as to their general expenses and profits from July 1, 1961, to April 21, 1966. The only reply to the above letters, so far as the record discloses, is one dated May 2, 1966, from Discos CBS, S.A., in which it is stated that they made "no exports of records to the United States" during the period mentioned, "and that the few shipments sporadicly [sic] made are not worthwhile taking into consideration for the purposes stated in your letter." That letter also states that "Discos Columbia de Mexico no

longer exists, Discos CBS, S.A. being the present name of our company."

Defendant's exhibit A is a report made by the Senior Customs Representative, Mexico, D.F., dated May 11, 1964, which refers to interviews on April 30, May 7 and May 8, 1964, at the office of the exporter with Mr. David L. Crump, Manager of the Records Division, from whom he obtained general information, and Sr. Adolfo Funes, the company's accountant, who furnished specific information needed for verification of invoices, methods of payment, etc. The report states that RCAVM is a subsidiary company of R.C.A. Victor in the United States and a branch of R.C.A. Victor International; that no formal contract exists between RCAVM and the parent company and business is subject to negotiation from time to time; that, from October 15, 1962, to the date of the report, sales for export to the United States are exclusively to R.C.A. Victor; prior thereto, sales were made directly to distributors in the United States, the relationship being that of buyer and seller, the merchandise being shipped pursuant to orders placed. The seller does not exercise any control or retain any interest in the merchandise after shipment.

Exhibit A also indicates that all special customs invoices furnished were checked against original orders, commercial invoices, and the firm's books of account and no discrepancies were noted; also representative invoices from August 1961 to October 1962 were spot checked against the company's books of account and no discrepancies were noted; that payments for all sales to distributors in the United States were made to the manufacturer by bank drafts and in most instances payment was made for each shipment separately, but at times more than one invoice was paid by the same bank draft; that since October 15, 1962, all sales were made to R.C.A. Victor in the United States and payment was by open account with periodic settlements.

Attached to exhibit A are copies of various pricelists showing U.S. dollar prices: October 15, 1962, for certain records (exhibit 1 attached); copies of pricelists showing the effective date of September 1, 1960, for sales to the home market (exhibit 2 attached); copy of pricelist for sales to third countries which have been in effect since September 10, 1962 (exhibit 3 attached); and pricelist dated March 18, 1964, the most recent change in prices to R.C.A. Victor Record Division (exhibit 4 attached). The report states that the principal market for export is at the company's office, Mexico, D.F., and that quantity purchased does not affect the unit price; that pricelists are adhered to without exception, except for discounts being offered to quantity purchasers during the time when merchandise was sold directly to distributors.

Exhibit A further states:

Course of Trade: Previous investigations conducted by this office have indicated that other manufacturers of similar merchandise sell for export through or to exclusive agents as in this case.

\* \* \* \* \* \* \*

Mr. Crump stated that only 15% to 20% of their total production is sold for export to the United States. The remainder is sold in the home market which is by far their greatest outlet, and further stated that their merchandise is freely offered for sale to third countries principally, and Central America. See attached price lists in Exhibits 2 and 3, respectively.

As heretofore indicated, counsel agree that constructed value, as defined, *supra*, is the proper basis for appraisement herein.

In order for plaintiffs to prevail, satisfactory evidence of constructed values different from the appraised constructed values must be proven. All of the elements in the definition of constructed value, section 402(d), *supra*, must, therefore, be established. In addition to other elements, the one listed as section 402(d)(2), *supra*, must be proven. That provision for ready reference is repeated here and reads:

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; \* \* \*

In the recent case of *Fashion Ribbon Co., Inc.* v. *United States*, 58 Cust. Ct. 737, R.D. 11314 (now pending review), the trial court indicated that under predecessor statutes where there is *no* other producer, the actual general expenses and profit of the exporter control, citing *United States* v. *Henry Maier*, 21 CCPA 41, T.D. 46378; *United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407; *English Electric Export & Trading Co., Inc., et al.* v. *United States*, 53 CCPA 84, C.A.D. 881; *United States* v. *Draeger Shipping Co., Inc.*, 6 Cust. Ct. 783, Reap. Dec. 5118, affirmed 29 CCPA 258, C.A.D. 199.

The trial court therein also considered the legislative history of cost of production in the tariff act prior to the advent of the Customs Simplification Act of 1956, which changed the provisions of section 402 of the Tariff Act of 1930 and concluded that under the "old law" general expenses and profit were provided for "*separately in different subdivisions*" [italics supplied], while those components, under the said simplified act, are brought "together in a single subdivision." Hence, the court states that Congress "did not intend a separate itemization for general expenses and profit."

It thus follows that if, in the case at bar, the importer has established that there were *no other producers* of merchandise of the same general class or kind as the merchandise undergoing appraisement, in the country of exportation, proof as to general expenses and profit of the exporter herein would be subject to consideration. However, the evidence clearly shows that there were other producers of records of the same general class or kind. Plaintiffs attempted to establish that while there were four other producers (in reality only three), they did not respond to their counsel's request for information as to their general expenses and profit. One firm of four (three) did reply, but alleged that they made "no exports of records to the United States" and that "the few shipments sporadicly [sic] made are not worthwhile taking into consideration for the purposes stated in your letter." See reply by Discos CBS, part of collective exhibit 7, which also states that "Discos Columbia de Mexico [one of the four firms addressed] no longer exists, Discos CBS, S.A. being the present name of our company."

The letter sent to Mr. Couttolenc of the exporter, part of said exhibit 7, by plaintiffs' counsel, refers to a telex by the addressee "to Mr. Dalto wherein you *list the companies of importance*." [Emphasis supplied.]

There is no evidence, and defendant does not concede, that the foregoing named companies were the only ones in Mexico exporting phonograph records to the United States during the involved period. Nor does the record show whether those companies exported phonograph records to the extent of the difference shown, *supra*, for imports and those allegedly exported by RCAVM, or whether other Mexican exporters shipped. Defendant's exhibit A, page 3, states that previous investigations conducted by Treasury Department, Mexico, D.F., "indicated that other manufacturers of similar merchandise sell for export through or to exclusive agents as in this case." While exhibit A does not list the names of other manufacturers, it is clear therefrom and from collective exhibit 7 that the plaintiffs herein have not been able to show, by satisfactory evidence, that a diligent effort was made to ascertain the names and addresses of *all* exporting producers of records in Mexico during the time involved by the instant appeals, or to write to *all* such producers. The so-called "list [of] the companies of importance" does not meet the requirements which would permit accepting the figures as to general expenses and profit of the exporter herein.

Plaintiffs' brief, page 18, alleges "that a *bona fide* and diligent effort was made to ascertain the usual general expenses and profits of other Mexican manufacturers within the judicial guidelines announced in *Berben Corp.* v. *United States*, 51 Cust. Ct. 314, 316, Reap. Dec. 10552. Therefore, we submit that the usual general expenses and profits of R.C.A. Victor Mexicana are the statutory usual general expenses and profits."

Defendant's brief, pages 13 and 14, alleges: "The record reflects, in Plaintiffs' Collective Exhibit 7, that letters together with return receipts requested were sent to three manufacturers of phonograph records in Mexico City. An answer was received from Discos CBS indicating that no exports of records to the United States were made by that company during the period in question. The letter forwarded to Orfeon Videovox, S.A., was not answered and no reason was given for the company's failure to reply. Pan American De Discos also did not reply, but in this instance the return receipt was not signed, indicating the letter was probably never duly delivered. These efforts on behalf of the plaintiffs do not meet the standard of due diligence as set forth in *Berben Corp.* v. *United States*, 51 Cust. Ct. 314, 316, R.D. 10552. In the *Berben* case, all of the letters sent out were answered; three of the competitors refused to divulge their general expenses and profits while the others stated they did not export similar merchandise during the period in question."

The court held in *The American Greiner Electronic, Inc.* v. *United States*, 57 Cust. Ct. 616, R.D. 11221 (pending on rehearing motion granted) that a letter requesting information as to general expenses and profit addressed to one company which was a commercial sales distributor for another exporter which stated it did not know "the calculation of our manufacturer and furthermore, it is not customary to deliver such information to a competitor."

* * * is inadequate to show that degree of diligence to ascertain such information as was held sufficient in *United States* v. *Berben Corporation*, 49 Cust. Ct. 497, A.R.D. 147, and, on remand, *Berben Corporation* v. *United States*, 51 Cust. Ct. 314, Reap. Dec. 10552. Without evidentiary facts to show that plaintiff made diligent but unrewarded efforts to ascertain the required information, there is nothing in the record to warrant a finding of adequate diligence. Lack of proof of the adequacy of such diligence on the part of plaintiff leaves undisturbed the presumptively correct value set by the appraiser.

On the record herein, the foregoing conclusion is also applicable. Note also *Inter-Maritime Forwarding Co., Inc.* v. *United States*, 56 Cust. Ct. 670, R.D. 11157, application for review pending, and *Hudson Shipping Co., Inc.* v. *United States*, 43 CCPA 19, C.A.D. 604.

In *Omni Products Corp. et al.* v. *United States*, 58 Cust. Ct. 675, R.D. 11291, the court stated:

Were it, nevertheless, to be reasonably assumed from the present record that other sales of imported merchandise of the same class or kind as that here involved had been made, the record is barren of proof of diligent effort to obtain information concerning the usual additions for general expenses and profit in this trade.

Gratuitous statements of counsel during the course of trial, unsupported by competent proof, to the effect that unrewarded efforts had

been made to contact others in the trade for the purposes of ascertaining their usual additions for profit and expenses are not a substitute for relevant evidence in this respect. There must be some proof to show that the companies solicited comprise *all* who might have been engaged in this class of trade. And it was not incumbent upon the defendant to furnish the evidence in this respect which plaintiff failed to present. Unless and until the importer has affirmatively established its claimed value and negatived the correctness of the appraised value, the burden does not shift to defendant to sustain the appraised value. *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502. [Emphasis supplied.]

Because the instant record obviously lacks that measure of due diligence in obtaining information from *all* other producers in Mexico, the court need not concern itself herein with deciding whether the figures submitted on behalf of the exporter are or are not "an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States."

The value returned by the appraiser is by statute presumed to be correct. 28 U.S.C., section 2633. See also *I. Arditi* v. *United States*, 50 CCPA 49, 51, C.A.D. 818, and cases cited therein. Even if the appraisement be erroneous, it remains in full force and effect (*Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593), unless the appealing party also establishes its own claimed value.

On the record, plaintiffs have failed to make out a *prima facie* case. The court makes the following findings of fact:

1. The imported merchandise consists of certain phonograph records exported from Mexico on and between August 30, 1961, to March 19, 1964.

2. Counsel agree and I find that said merchandise is not on the final list promulgated by the Secretary of the Treasury in 93 Treas. Dec. 14, T.D. 54521, and that constructed value as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, is the proper basis for determining the value of the imported merchandise.

3. Appraisement was made on the basis of constructed value, defined, *supra*, at values higher than either the invoiced, entered, or claimed values.

4. Plaintiffs' proofs lack satisfactory evidence of diligence in ascertaining the "amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities

and in the ordinary course of trade, for shipment to the United States," as required by section 402(d)(2) of said amended tariff act and by the decisions, cited, *supra*.

5. It, therefore, is not necessary to determine whether the figures of the instant importer are or are not the amount referred to in section 402(d)(2), *supra*.

As conclusions of law, the court holds:

1. That constructed value as defined, *supra*, is the proper basis for the ascertainment of the value of the imported merchandise.

2. That plaintiffs have failed to make out a *prima facie* case establishing that the appraised values are erroneous and that the general expenses and profit of the exporter may be accepted as part of the claimed values as representing the statutory constructed value for the imported merchandise.

3. The appraised value for each item in each reappraisement appeal represents the constructed value and will be affirmed.

Judgment will be entered accordingly.