(R.D. 11760)

BROWN, ALCANTAR & BROWN, INC., ET AL. *v.* UNITED STATES

(Decided January 18, 1972)

*Sharretts, Paley, Carter & Blauvelt* (*Gail T. Cumins* and *Eugene F. Blauvelt* of counsel) for the plaintiffs.

*L. Patrick Gray, III,* Assistant Attorney General (*Robert Blanc,* trial attorney), for the defendant.

LANDIS, Judge: This case involves 293 appeals for reappraisement consolidated for trial to determine, pursuant to section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, 19 U.S.C.A., section 1401a(d), the constructed value of phonograph records manufactured and exported from Mexico in the years 1961–1969, inclusive. Both sides agree that constructed value is the proper basis for determining the value of the phonograph records. The issue is the proper amount of constructed value.

Plaintiffs contend that the appraised constructed values are too high and are the equivalent of the price at which the manufacturer sold the phonograph records for home consumption in Mexico. They bring this case to establish constructed values equal to the price at which the manufacturer sold the phonograph records for export to the United States to the importers.

Section 402(d), as amended, *supra*, provides as follows:

> (d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—
>
>> (1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;
>>
>> (2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and
>>
>> (3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

The manufacturer of the phonograph records in this case, RCA Victor Mexicana, S.A. de C.V. (hereinafter called RCA VM) was also the manufacturer of the phonograph records in the appeals for re-

appraisement tried in *N. M. Albert Co., Inc., et al.* v. *United States*, 59 Cust. Ct. 788, R.D. 11417 (1967), upon the same issue of constructed value. The trial judge in *N. M. Albert* found it unnecessary to weigh plaintiffs' constructed value computations and sustained the appraised constructed values upon a finding that *N. M. Albert* had failed to prove that it exercised due "diligence in ascertaining the 'amount for general expenses and profit equal to that usually reflected in sales of merchandise [phonograph records] of the same general class or kind as the merchandise [phonograph records] undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States,' as required by section 402(d)(2) of said amended tariff act and by the decisions * * * [cited by the trial judge]." *N. M. Albert* there sought to use the usual general expenses and profit of RCA VM, upon argument that it had diligently but unsuccessfully tried to ascertain the general expenses and profit usually reflected in sales of phonograph records made by other producers in Mexico for shipment to the United States. On review the decision in *N. M. Albert* was affirmed, *Id.* v *Id.*, 62 Cust. Ct. 1029, A.R.D. 254 (1969). This case is, in essence, a retrial of the *N. M. Albert* constructed value issue.

Plaintiffs contend that, upon this record, they have cured the defect in proof adverted to in the *N. M. Albert* decision, and that constructed values may now be determined upon the weight of the manufacturer's computed constructed values (reflecting the general expenses and profit of RCA VM) in rebuttal of the presumptively correct appraised constructed value. Defendant argues that plaintiffs have not only again failed to establish due diligence in ascertaining the general expenses and profits of other producers of phonograph records in Mexico, but have failed to establish that the constructed values computed in evidence, are the proper constructed values. I find it unnecessary to discuss the subsidiary "diligence" issue briefed by the parties. Since I am unable to determine that plaintiffs' claimed constructed values are, upon this record, adequate to the statutory definition of constructed value and the judicial precedents which I shall discuss, the appraised values, whether or not erroneous, are sustained. *Kobe Import Co.* v. *United States*, 42 CCPA 194, 198, C.A.D. 593 (1955).

There is no oral testimony of record in this case. The evidence is documentary,[1] as is the evidence of record in *N. M. Albert, supra*, which defendant, without objection, incorporated herein.

Plaintiffs' only evidence of the claimed constructed values is the affidavit of Francisco Cruz (plaintiffs' exhibit 4), subscribed and sworn

---

[1] Plaintiffs' exhibits 1, 2, 3, 4, and 5 are affidavits. Defendant's exhibits A, B, C, and D are extracts of United States Department of Commerce statistical reports of commodity imports by quantity and value, including phonograph records imported from Mexico.

to before the American Consul, Mexico, on December 16, 1969. Mr. Cruz, in his affidavit, avers that he is the cost accountant of RCA VM; that his company manufactures, processes, and sells phonograph records for home consumption, and for export to the United States and other countries; that he periodically reviews, revises, and keeps in separate books, an account of what it costs RCA VM to produce phonograph records for sale in Mexico and for export to the United States; and that

> * * * From June 15, 1961 through October 15, 1962, my company sold its records for exportation to the United States directly to United States distributors at c.i.f. duty paid delivered prices. Included in these prices were the costs for freight, insurance, United States Customs duties and a 10% U.S. excise tax. Since October, 1962 my company has sold for exportation to the United States only to RCA Record Division f.o.b. Mexico City.

> Throughout my experience with my company I have been thoroughly familiar with the costs of materials, fabrication, artists' and composers' costs, usual general expenses, cost of packing and the amount of profit realized by my company in its sales of records for exportation to the United States. The books of the company showing these costs are kept under my personal supervision and I know them to be correct.

Affiant goes on to state what it costs RCA VM to produce each of the various sizes and series of records presumably here in litigation, under headings titled "Material," "Labor," "Recording Cost," "Artist & Composer Royalty Cost," "Total Materials and Fabrication," "Manufacturing Overhead," "Administrative Overhead," "Total Usual General Expenses," "All Coverings and Containers," "Profit," "Total Constructed Value in Mex. Ps.," and "Total Constructed Value in U.S. Dollars at Official Rate of Exchange." Opposite each heading are the cost figures for those elements for the years 1961–1969, inclusive. Affiant's explanation of the claimed cost figures for export is that:

> The Material costs vary from period to period and from record series to record series because of the following factors: (1) use of regenerated material (2) life span of the matrix of the record and (3) plant capacity. Variations in labor are due to (1) increased wages (2) life of the matrix (mold), greater life meaning less labor cost and (3) plant capacity.

> Manufacturing overhead equals the sum of overhead and service departments and covers the following:
>> Indirect Materials–Glue, packing boxes, bags thinner, gasoline machine lubricants.
>> Indirect Labor–Plant supervisors, managers fringe benefits, maintenance.
>> Depreciation and Amortization
>> Insurance–Fringe benefits

Administrative overhead covers the costs for marketing, shipping warehousing, officers' salaries and the 3% Mexican sales tax attributable to records exported to the United States.

Profit is shown as the difference between the cost of producing records for exportation to the United States and the sales price of those records sold for export to the United Staes. [Exhibit 4, page 9.]

After next listing the amounts at which he is informed customs appraised the phonograph records exported by his company in this litigation, affiant states:

The appraised values bear no relationship to the cost of materials, labor and amount for general expenses and profit usually added with respect to records produced and sold for exportation to the United States. The appraised values are identical to the prices at which my company sold such records for home consumption in Mexico as is evidenced by the attached home market price lists. The prices at which the records were sold for consumption in Mexico were higher than the prices at which the same records were sold for exportation to the United States because additional expenses were incurred in sales for home consumption in Mexico. The following compilations demonstrate the differences in cost items incurred in sales of records in the home market as opposed to the same records sold for export * * *. [Exhibit 4, page 11.]

The differences in cost figures for the various sizes and series of records produced for the home market and for export to the United States for the years 1961–1969, inclusive, are computed under headings as follows:

| Home Market Price | | | * * * [figures] |
|---|---|---|---|
| Less: | | | |
|     Difference in Mfg. Overhead | * | * * | " |
| Difference in Administrative Ov.: | | | |
|     Deductions from Gross Sales (Returns, Cash | | | |
|       Discounts, Allowances) | * * * | | " |
|     Selling Cost Difference | * * * | | " |
|     Advertising | * * * | | " |
|     Administration Difference | * * * | | " |
|     Reserve Accruals | * * * | | " |
| Total Additional Admve. Overhead | * * * | | " |
| Profit Difference | * * * | | " |
| Export Price | * * * | | " |

[Except for the headings, which I do not consider self-explanatory, the affidavit says nothing in explanation of the headings or the reason for the differences.]

As noted in *N. M. Albert* (A.R.D. 254), *supra*, the appraiser is not required to and did not, in these appeals for reappraisement, itemize the various statutory elements of constructed value included

in the appraised values. Plaintiffs, claiming lower constructed values than those at which the phonograph records were appraised, must, however, prove the statutory elements of constructed value, and must do so, as hereafter discussed, upon proof from which the court can determine that the claimed constructed values fairly reflect the market value of the merchandise. *New York Credit Men's Adjustment Bureau, Inc., etc.* v. *United States*, 64 Cust. Ct. 770, 775, R.D. 11715, 314 F. Supp. 1246, 1250 (1970) (review pending). Mr. Cruz's affidavit establishes, in essence, that greater costs are incurred in producing and selling phonograph records for home consumption in Mexico than for export to the United States, and that since 1962 RCA VM sold for export to the United States only to RCA Victor, Record Division. Defendant's exhibit A of the incorporated record, an agent's investigation report on RCA VM, establishes (nowhere is it denied) that RCA VM is a subsidiary of RCA Victor in the United States. The phonograph records imported from 1962 on, therefore, presumptively involved transactions between related persons which, in constructing values which fairly reflect market value under section 402(d), *supra*, the appraiser chose to disregard pursuant to section 402(g), as amended, which provides as follows:

(g) TRANSACTIONS BETWEEN RELATED PERSONS.—

(1) For the purposes of subsection (c)(1) or (d), as the case may be, a transaction directly or indirectly between persons specified in any one of the subdivisions in paragraph (2) of this subsection may be disregarded if, in the case of any element of value required to be considered, the amount representing that element does not fairly reflect the amount usually reflected in sales in the market under consideration of merchandise of the same general class or kind as the merchandise undergoing appraisement. If a transaction is disregarded under the preceding sentence and there are no other transactions available for consideration, then, for the purposes of subsection (d), the determination of the amount required to be considered shall be based on the best evidence available as to what the amount would have been if the transaction had occurred between persons not specified in any one of the subdivisions in paragraph (2).

(2) The persons referred to in paragraph (1) are:

(A) Members of a family, including brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants;

(B) Any officer or director of an organization and such organization;

(C) Partners;

(D) Employer and employee;

(E) Any person directly or indirectly owning, controlling, or holding with power to vote, 5 per centum or more of the

outstanding voting stock or shares of any organization and such organization; and

(F) Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person.

On the merits of the claimed constructed values, Mr. Cruz has given in detail figures for RCA VM's cost of materials and fabrication, and general overhead expenses and profit in producing records for export to the United States. Whether, as plaintiffs say, the detail is greater than that required by statute, is unimportant to our decision here. What is important is whether the claimed constructed values comport with a constructed value that fairly reflects market value. The appraiser presumptively determined that the amounts representing the statutory elements of what it cost RCA VM to produce phonograph records for export to RCA Records Division in the United States did not fairly reflect the amount usually reflected in sales in Mexico of phonograph records of the same general class or kind as the phonograph records undergoing appraisement. One must conclude, therefore, that the appraised constructed values represent amounts which the appraiser, on the evidence available, considered RCA VM would have included in transactions with unrelated parties. Assuming, as I have for purposes of this decision, that RCA VM was unable to ascertain the general expenses and profit of other manufacturers in Mexico, cf. *United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407 (1949), a manufacturer's own "[s]ales in other markets may be considered for comparison purposes to determine if the claimed value fairly reflects market value and plaintiff may show that expenses incurred therein are not applicable to sales in the market under consideration." *New York Credit Men's Adjustment Bureau, Inc., etc.* v. *United States, supra*, at p. 776. Mr. Cruz, in his affidavit, gives figures which he avers "demonstrate the differences in cost items incurred in sales of records in the home market as opposed to the same records sold for export." Plaintiffs, however, have not attempted to reconcile the differences on a comparison basis with the claimed constructed values for export to the United States set forth in the affidavit. I am unable to find a creditable basis for assessing that the differences represent costs incurred in producing phonograph records for sale in the home market that are not incurred in producing phonograph records for sale in the export market to the United States. The differences are listed under cost headings quite different from the headings used to chart the constructed values claimed in the affidavit. No figures are given as to what it costs to produce phonograph records in the home market for comparison with the cost figures for producing records for the export market to the United States. "If there were

higher \* \* \* costs or selling expenses in the home market than for exportation \* \* \* the cost differentials should have been itemized and proven specifically in order that the court might determine whether in fact \* \* \* [the] lower prices fairly reflected the market value of the \* \* \* [phonograph records]." *Ellis Silver Co., Inc* v. *United States*, 63 Cust. Ct. 647, 654, R.D. 11688, 308 F. Supp. 704, 709 (1969), affirmed, *Id.* v. *Id.*, 67 Cust. Ct. 564, A.R.D. 293 (1971) (appeal pending).

Dispute as to the amount of constructed value, in my opinion, cannot be determined upon "differences" listed under items of expense that are tied to the "Home Market Price," cf. *United States* v. *A. N. Deringer, Inc.*, 46 Cust. Ct. 762, 767, A.R.D. 127 (1961), appeal dismissed, 48 CCPA 169 (1961), which are unrelated to the items of cost incurred in producing the phonograph records for export to the United States. The home market price has no necessary relevance to the components of constructed value. As discussed in *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 55 Cust. Ct. 586, Reap. Dec. 11058 (1965), affirmed *Id.* v. *Id.*, 58 Cust. Ct. 834, A.R.D. 223 (1967), and *Kaysons International, Ltd.* v. *United States*, 66 Cust. Ct. 560, R.D. 11741 (1971), some probative evidence is necessary to establish the statutory elements of costs incurred in producing the phonograph records for sale in the home market and other countries as against costs incurred in producing the same records for export to the United States.

Assessed in practical terms, and considering such factors as completeness, and adequacy of bases, *Mannesmann-Meer, Inc.* v. *United States*, 58 CCPA 6, C.A.D. 995 (1970), I find that the evidence in this case does not substantially establish, cf. *A. Zerkowitz & Co., Inc.* v. *United States*, 58 CCPA 60, 60, C.A.D. 1005 (1970),[2] a constructed value in the amounts claimed, adequate to the definition in section 402(d) and considerations in section 402(g).

I find as facts:

1. That the merchandise in these appeals for reappraisement consists of phonograph records exported from Mexico by RCA VM during the period 1961–1969.

2. That the phonograph records were appraised on the basis of constructed value under section 402(d) of the Tariff Act of 1930, as amended.

3. That constructed value under section 402(d) is the claimed basis for valuation of the phonograph records.

4. That, at the times of exportation, greater costs were incurred in producing phonograph records for sale in Mexico than for export to the United States.

---

[2] Footnote No. 5.

5. That, from 1962–1969, inclusive, RCA VM sold for export to the United States only to RCA Victor, Record Division, United States.

6. That, at the times of exportation, RCA VM was a subsidiary of RCA Victor, United States.

7. That there is no substantial evidence upon which it can be determined that the claimed constructed values correctly reflect the elements of constructed value as defined in section 402(d).

I conclude as a matter of law:

1. That constructed value, as defined in section 402(d) of the Tariff Act of 1930, as amended, is the proper basis for appraisement of the phonograph records covered by the appeals for reappraisement listed in the schedule attached to and made a part of this decision.

2. That the constructed values are the values returned by the appraiser.

Judgment will be entered accordingly.