(R.D. 11259)

Donald Schmidt
Simon Carter Company } *v.* United States

Entry No. 429.

(Decided February 14, 1967)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiffs.
*Barefoot Sanders*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Ford, Judge: The proper value for dutiable purposes of certain grain milling machinery described on the invoice as "B–10 measurers" forms the subject of the above appeal for a reappraisement. The measurers were invoiced at a price of $392 per unit, plus packing case,

plus carriage and f.o.b. expenses, less a discount of 20 percent. The appraiser at Minneapolis appraised the merchandise as entered on the basis of constructed value, as defined in section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, since the merchandise does not appear on the final list as promulgated in T.D. 54521.

It is the contention of plaintiffs herein that said merchandise should have been appraised at the invoice unit price, plus packing, carriage, and f.o.b. expenses, less 20 percent, on the basis of either export value, as defined in section 402(b), Tariff Act of 1930, as amended, *supra*, or on the basis of constructed value, as defined in section 402(d) of said act, as amended, *supra*.

The pertinent portions of section 402, Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, *supra*, provide as follows:

(a) BASIS.—Except as otherwise specifically provided for in this Act, the value of imported merchandise for the purposes of this Act shall be—

 (1) the export value, or

 (2) if the export value cannot be determined satisfactorily, then the United States value, or

 (3) if neither the export value nor the United States value can be determined satisfactorily, then the constructed value;

 \* \* \* \* \* \* \*

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

 \* \* \* \* \* \* \*

(d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

 (1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

 (2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are

made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

\* \* \* \* \* \* \*

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

 (A) to all purchasers at wholesale, or

 (B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

\* \* \* \* \* \* \*

(g) TRANSACTIONS BETWEEN RELATED PERSONS.—

(1) For the purposes of subsection (c) (1) or (d), as the case may be, a transaction directly or indirectly between persons specified in any one of the subdivisions in paragraph (2) of this subsection may be disregarded if, in the case of any element of value required to be considered, the amount representing that element does not fairly reflect the amount usually reflected in sales in the market under consideration of merchandise of the same general class or kind as the merchandise undergoing appraisement. If a transaction is disregarded under the preceding sentence and there are no other transactions available for consideration, then, for the purposes of subsection (d), the determination of the amount required to be considered shall be based on the best evidence available as to what the amount would have been if the transaction had occurred between persons not specified in any one of the subdivisions in paragraph (2).

(2) The persons referred to in paragraph (1) are:

\* \* \* \* \* \* \*

 (F) Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person.

The issue thus presented to the court for determination is whether or not the 20 percent discount or allowance is or is not part of the dutiable value of the imported merchandise either under export value or constructed value.

The record herein consists of the testimony of two witnesses called on behalf of plaintiffs and eight exhibits. Plaintiffs' exhibit 1 is an affidavit of Eric Arthur Stanger, a director of the exporter. Plaintiffs' exhibit 2 is an affidavit of John Bruce, general accountant for the exporter. Plaintiffs' exhibit 3 is an affidavit of R. Leng-Smith, a chartered accountant in charge of the audit of the books of the exporter. Plaintiffs' exhibits 4 and 5 are affidavits of Charles Dale, a director of the exporter. Plaintiffs' exhibit 6 is a copy of an agree-

ment between the exporter and the importer. Plaintiffs' exhibit 7 is a comparative analysis of the operation of the milling sales department of plaintiffs covering the year ending November 30, 1963, and plaintiffs' exhibit 8 is a profit and loss statement of plaintiffs for the year ending November 30, 1963.

The first witness called on behalf of plaintiffs was Donald Schmidt, purchasing agent for Simon Carter Company, who testified that he signed the appeal for a reappraisement involved herein and that he was authorized to do so.

The next witness called on behalf of plaintiffs was Mr. William Kalina who testified that Simon Carter Company merged with the Day Company to form the Carter-Day Company, the successor to Simon Carter; that prior to the merger, he was secretary-treasurer of Simon Carter and is now treasurer of Carter-Day Company.

The witness testified that the business of Simon Carter Company was to manufacture grain cleaning and processing machinery and to buy and sell equipment for flour milling and flour mill processing; that in 1963, Henry Simon, Ltd., the exporter, was a wholly owned subsidiary of Henry Simon Holdings, Ltd., and that Simon Carter Company was a wholly owned subsidiary of the Hart-Carter Company of which Henry Simon Holdings, Ltd., owned 13 percent of the common stock and that, from approximately July 1, 1958, to 1962, Henry Simon Holdings, Ltd., and Hart-Carter Company each owned 50 percent of the stock of Simon Carter Company.

Mr. Kalina then testified that the purchase price was arrived at as a result of negotiations of a contract between Simon Carter Company and Henry Simon, Ltd., a copy of which was received in evidence as plaintiffs' exhibit 6; that the purpose of the contract was to appoint Simon Carter Company the exclusive distributor in the United States of the products of Henry Simon, Ltd., and that the imported merchandise falls within category "i" of paragraph 2(b) of the contract as "Flour and Maize Milling Machinery and Accessary Machinery therefore," which provides a discount for merchandise in this category of 20 percent; that the merchandise involved herein was purchased to fill an order for one of Simon Carter Company's customers and, in the opinion of the witness, the purchase price was a fair price since they would be able to make a modest profit; that there were no restrictions imposed as to the disposition or use of the merchandise; that, while he was able to estimate the net profit on the resale of the involved measurers, he was not able to determine the explicit profit since he was not able to allocate the expenses to the specific invoice.

A comparative analysis of the operation of the milling sales department of Simon Carter Company, which handled the imported merchandise for the year ending November 30, 1963, was received in evi-

dence, over objection, as plaintiffs' exhibit 7. The witness stated that there was no way of differentiating in the analysis between the involved measurers and other merchandise sold by that department and that estimates on profits of a particular item is determined by obtaining the gross profit (the selling price less the cost of the merchandise) and deducting administrative and overhead expenses which can only be estimated; that the expenses could only be estimated since Simon Carter Company had five sales departments sharing, however, common services of purchasing, pay rolls, administration, credits, and collections; that salaries would be allocated to the various departments depending upon the amount of time the worker spent in a particular department.

On cross-examination, the witness stated that his company does buy flour milling equipment from other foreign exporters but that he was not sure whether any were purchased in 1963; that the agreed purchase price of the involved measurers was $392 per unit, plus packing, carriage, and f.o.b. expenses, less 20 percent of the total figure; that he believed this price was the price of Henry Simon, Ltd., for sales in the home market and to third countries and that the 20 percent discount was given to Simon Carter Company by virtue of its agreement to represent and sell its products in the United States; that the 20 percent discount was arrived at through negotiations with Simon Carter Company in order to obtain the greatest possible discount for itself.

Based upon the record as made, plaintiffs contend they have established an export value, as defined in section 402(b) of said act, as amended, *supra*. It is apparent from the record that sales to the importer herein were on an exclusive basis and between related parties within the purview of the definitions contained in paragraph 402 (f) and (g), *supra*. While export value may exist under paragraph 402(b) of said act, as amended, *supra*, notwithstanding the fact that the transaction involved is on an exclusive basis and between related parties, it must, nevertheless, be established by competent evidence that the contended value fairly reflects the market value.

In *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841, the court had before it for determination a factual situation similar to the instant case. In the *Acme* case, sales of steel strapping to the United States were made on an exclusive basis to a related party. The court in determining the issue, based upon the record therein, held the importer had established an export value which was equivalent to the domestic price, less 30 percent. It was established that the 30 percent deduction represented certain selling expenses incurred in the home market but were not incurred when sold for export. The court therein concluded said value fairly reflected the market value.

In the case of *John V. Carr & Son, Inc.* v. *United States*, 52 CCPA 62, C.A.D. 860, the appellate court, in affirming this court, distinguished insofar as is pertinent herein the *Acme* case, *supra*, which involved selling expenses while the *Carr* case, *supra*, involved fixed expenses.

It is to be noted that plaintiff's exhibits 1, 2, and 4 list items which the affiants believed were not incurred when sales were made to the importer. The following exemplars were set forth in the above mentioned affidavits: Traveling expenses, publicity, patents, motor cars, commissions, research expenses, electrical department expenses, donations, solicitors' charges, technical representatives salaries, premiums for all types of insurance, pensions, furniture and fittings, bad debts, administrative costs, common services, cables, telephone and postage charges, depreciation, and other miscellaneous and incidental expenses.

It is at once apparent that, while some of the above exemplars are selling expenses and might properly fall within the purview of the *Acme* case, *supra*, there are some which are fixed expenses which are allocated to domestic consumption and fall within the *Carr* case, *supra*. Since the evidence does not establish the actual costs or percentage of costs of the above enumerated items, the court is not in a position to eliminate the fixed expenses and determine whether the so-called selling expenses, if eliminated, would result in a value which fairly reflects the market value as prescribed by section 402(g) of said act, as amended, *supra*. Accordingly, I am of the opinion that plaintiffs have failed to establish an export value.

Insofar as constructed value is concerned, in addition to the statutory requirements for the costs of materials, fabrication, general expenses, and profit, plaintiff must establish, when the transaction is between related parties, that the value fairly reflects the market value. For the reasons set forth, *supra*, it is apparent that plaintiffs have failed to establish that the contended value fairly reflects the market value. The court while it does have, in affidavit form, figures supplied by the manufacturer, they obviously do not include certain expenses which the exporter believes were not incurred in sales to the United States. This is substantiated in plaintiffs' exhibits 1, 2, and 4. Under the principals in the *Carr* case, *supra*, we can not consider such figures which by accounting practices of the firm do not include certain fixed expenses but allocate them exclusively for domestic consumption. Accordingly, plaintiffs have failed to overcome the presumption of correctness attaching to the appraised value.

On the record as presented, I find as facts:

1. The imported merchandise consists of certain B–10 measures which were appraised on the basis of constructed value, as defined

in section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

2. That said merchandise does not appear on the final list, T.D. 54521.

3. That said merchandise was sold exclusively to Simon Carter Company.

4. That the plaintiff, Simon Carter, and the exporter, Henry Simon, Ltd., are related persons within the meaning of section 402(g), Tariff Act of 1930, as amended, *supra*.

5. That, at or about the time of exportation, such merchandise was not freely sold or offered for sale for exportation to the United States to all purchasers at wholesale.

6. Plaintiffs have failed to prove that the claimed value of $392, plus packing, carriage, and f.o.b. expenses, less 20 percent, is a price which, at or about the time of exportation, in the ordinary course of trade, fairly reflects the market value of the merchandise in the principal markets of England for exportation to the United States.

7. Plaintiffs have failed to establish a constructed value which differs from the appraised value.

I conclude as matters of law:

1. Constructed value, as defined in section 402(d), Tariff Act of 1930, as amended, *supra*, is the proper basis for the determination of value of the merchandise here involved.

2. Such value is represented by the appraised value.

Judgment will be entered accordingly.