(R.D. 11687)

GLOBE SHIPPING CO., INC. *v.* UNITED STATES

Entry No. 901247.

(Decided December 12, 1969)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff. *William D. Ruckelshaus*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Ford, Judge: This appeal for reappraisement involves the question of the proper dutiable value of certain grain milling machines entered at New York by plaintiff, Globe Shipping Co., Inc., the customhouse broker for Simon Carter Co. The parties are in agreement that the merchandise does not appear on the final list, 93 Treas. Dec. 14, T.D. 54521, and therefore the merchandise is properly subject to appraisement under section 402, Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

The involved machines were appraised under section 402(d), Tariff Act of 1930, as amended, *supra*, on the basis of constructed value. Plaintiff contends alternatively that said merchandise is properly subject to appraisement under section 402(b) or 402(d) of said act, as amended, *supra*, on the basis of export or constructed value, respectively. The value contended for in each instance is the invoice unit value plus packing, less 20 percent or the equivalent. The basic dispute revolves around the 20 percent discount. A similar case involving the same importer and issue, but different machines, was decided in favor of defendant. *Donald Schmidt* and *Simon Carter Company* v. *United States*, 58 Cust. Ct. 584, R.D. 11259 (1967).

The pertinent portions of section 402 of the Tariff Act of 1930, as amended, *supra*, provide as follows:

(a) Basis.—Except as otherwise specifically provided for in this Act, the value of imported merchandise for the purposes of this Act shall be—

(1) the export value, or

(2) if the export value cannot be determined satisfactorily, then the United States value, or

(3) if neither the export value nor the United States value can be determined satisfactorily, then the constructed value;

\*　　\*　　\*　　\*　　\*.　　\*　　\*

(b) Export Value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses

incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\*      \*      \*      \*      \*      \*      \*

(d) Constructed Value.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

\*      \*      \*      \*      \*      \*      \*

(f) Definitions.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

\*      \*      \*      \*      \*      \*      \*

(g) Transactions Between Related Persons.—

(1) For the purposes of subsection (c)(1) or (d), as the case may be, a transaction directly or indirectly between persons specified in any one of the subdivisions in paragraph (2) of this subsection may be disregarded if, in the case of any element of value required to be considered, the amount representing that element does not fairly reflect the amount usually reflected in sales in the market under consideration of merchandise of the same general class or kind as the merchandise undergoing appraisement. If a transaction is disregarded under the preceding sentence and there are no other transactions available for consideration, then, for the purposes of subsection (d), the determination of the amount required to be considered shall be based on the best evidence available as to what the amount would have been if the transaction had

occurred between persons not specified in anyone of the subdivisions in paragraph (2).

(2) The persons referred to in paragraph (1) are:

\*      \*      \*      \*      \*      \*      \*

(F) Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person.

The record herein consists of the testimony of one witness called on behalf of plaintiff and five exhibits.

Exhibit 1 is an affidavit of Eric Arthur Stanger, a director of Henry Simon, Ltd., the exporter herein. This affidavit states there are seven other divisions in addition to the grain milling division which manufactured the involved machines and of which the affiant is in charge. The invoiced price per unit "was calculated in accordance with the basis laid by the Company for this type of machine" and the 20 percent discount was given on his authority. The parent company of the exporter Henry Simon, Ltd., is Simon Engineering, Ltd., which is a public corporation listed on the London Stock Exchange. Henry Simon, Ltd., had a 13 percent interest in Simon Carter by virtue of ownership of that percentage of stock of Hart Carter, the parent company of Simon Carter. The 20 percent discount was based upon the fact that expenses for sales to Simon Carter were approximately 20 percent less than sales in the home market or to third countries and that Simon Carter was obliged to incur various expenses which would ordinarily be incurred by Henry Simon, Ltd. The profit, based upon an examination of the books, was not lower to Simon Carter than in sales in the home market or to third countries.

The affiant further stated that the price after taking into account the difference in selling expenses in the home market and to third countries was equivalent to the invoiced price. The involved transaction was a direct sale made pursuant to a request for a price for said merchandise. The lowest price which his firm would take and which the importer would accept was the invoice price. He believed this price fairly reflected the market value since it included the full cost of production, including profit. Except for the fact that Simon Carter is the exclusive United States distributor, they would have been willing to sell to other United States distributors at the same price and discount. The sale was made without restrictions as to disposition or use.

The price in the home market, in sales to the United States or to third countries never varied by reason of quantity. No price lists were published by the manufacturer. The only other manufacturer of grain milling machines is Thomas Robinson and Son, Ltd., who does not export purifiers to the United States.

Plaintiff's exhibit 2 is an affidavit of Mr. Charles Dale, a former director of the manufacturer who prior to retirement was in charge of the milling division. His duties included determining the selling prices. These were arrived at by taking into account the cost of production of the machines which information he obtained from the books and records of the company. To the knowledge of the affiant only two companies manufactured similar equipment, the Robinson firm referred to in plaintiff's exhibit 1, and E. R. & F. Turner, Ltd. Letters were sent to both firms requesting the profit usually added by them. Copies of these letters and the replies declining to give such information are attached to plaintiff's exhibit 2.

Plaintiff's exhibit 3 is an affidavit of John Bruce, chief accountant of the exporter herein. Said exhibit contains information relative to the costs and will be referred to as necessary, *infra*.

Plaintiff's exhibit 4 is an affidavit of R. Leng-Smith, an accountant whose firm audited the books of the exporter. The affiant affirms some of the figures and percentages contained in plaintiff's exhibit 3.

Plaintiff's exhibit 5 is the contract between Henry Simon, Ltd., and Simon Carter Co. Said contract defines the type of merchandise to which Simon Carter Co. has the exclusive rights in the United States and the amounts of discounts.

Mr. William Kalina, treasurer of Carter Day Co., the successor of the actual importer herein, Simon Carter, was called on behalf of plaintiff. Mr. Kalina confirmed by his testimony that Simon Carter and the exporter are "Related Persons" within the statutory provisions contained in section 402(g), Tariff Act of 1930, as amended, *supra*, and were selected purchasers under section 402(f)(1)(B). The business of Simon Carter was the manufacture and sale of grain cleaning and grain processing machinery. Prior to his present association, he was with a public accounting firm engaged in audit work and cost accounting. The machine involved was described by Mr. Kalina as follows:

> A purifier is a machine used in the process of manufacturing flour, used in flour mills. It is a unit consisting of screening cloths over frames and the function of the unit primarily is to sift flour and help grade it into a finer form in various different grades through a sifting operation. The unit is approximately 7 feet in length, 6 feet wide and perhaps 3 feet high.

At the time the involved machines were purchased, Simon Carter had a contract, plaintiff's exhibit 5, with the exporter. The involved machines fall within the category covered by paragraph 2(b)(1) and the discount of 20 percent is covered by paragraph 6 of said contract. The witness took some part in the negotiations of the discount and explained that the amount was arrived at by negotiation. The resultant

figure was the best discount they could obtain and the largest discount the exporter would allow.

The involved machines were ordered for a customer, Eckhart Milling Co. The drawing fees set forth in paragraph 6(b) of exhibit 5 were not applicable because it was not a milling contract. Insofar as the apportionment of expenses as set forth in plaintiff's exhibit 4, he agreed it was proper, in his opinion as an accountant, to do so.

In considering the primary claim of plaintiff herein for valuation on the basis of export value as set forth in section 402(b), Tariff Act of 1930, as amended, *supra*, it is evident that said importer is a selected purchaser within the purview of section 402(f) (1) (B), *supra*. In view of the definition of "freely sold or in the absence of sales, offered for sale" in section 402(f) (1), *supra*, it is readily apparent that export value cannot be predicated on sales or offers for sale to all purchasers under 402(f) (1) and that proof relative to the question of whether such sales "fairly reflects the market value" is required.

In *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841 (1964), the court had before it for determination a factual situation similar to the instant case. In the *Acme* case, sales of steel strapping to the United States were made on an exclusive basis to a related party. The court in determining the issue based upon the record therein, held the importer had established an export value which was equivalent to the domestic price, less 30 percent. It was established that the 30 percent deduction represented certain selling expenses incurred in the home market but not incurred when sold for export. The court therein concluded said value fairly reflected the market value.

In the case of *John V. Carr & Son, Inc.* v. *United States*, 52 CCPA 62, C.A.D. 860 (1965), the appellate court, in affirming this court, distinguished insofar as is pertinent herein the *Acme* case, *supra*, which involved selling expenses while the *Carr* case, *supra*, involved fixed expenses.

The *Acme* and *Carr* cases, *supra*, and a number of cases subsequently following these decisions have set some standards and exceptions for the determination of what evidence may or may not be used to determine whether a price fairly reflects the market value. There are no specific guidelines which would apply in all instances. What must, however, be borne in mind is that prior to the Customs Simplification Act of 1956, *supra*, sales to selected purchasers or to related parties were disregarded. Congress, in enacting the Customs Simplification Act of 1956, permitted consideration under such conditions but took the precautionary step of providing that said price fairly reflected the market value. The reason is obvious—to prevent the rigging of prices between parties fitting within those two categories.

In the case at bar, the record is devoid of any evidence relating to the price of such or similar machines in the home market or in sales to third countries. We do have evidence in plaintiff's exhibit 3 that the total sales of the milling division amounted to £700,745 for the year involved and that the total overhead and expenses for said period is £242,141. Of said £242,141, the sum of £113,369 it is alleged is not applicable to Simon Carter sales. Plaintiff's exhibit 3 set forth four categories, (1) direct expenses, (2) common expenses, (3) research and development expenses, (4) electrical engineering department expenses and the reasons why certain expenses are not applicable. Sales to Simon Carter represented £125,186 which when subtracted from total sales of £700,745 leaves the sum of £575,559. The sum of £113,369 as a percentage of the total on Simon Carter sales of £575,559 is 19.7 percent which plaintiff's counsel urges is within the realm of the 20 percent discount figure and hence the invoice price less 20 percent fairly reflects the market value under the basis of export value.

Even if we were to consider all the reasons for excluding certain expenses and the allocation of certain common expenses to be proper, I have no real evidence with which to compare such costs with those in the home market or third country production.

Accordingly, without any information as to the sales prices or the production costs of merchandise sold in the home market or to third countries, a proper determination cannot be made herein under section 402(f)(1)(B).

There is no question that under the *Acme* case, *supra*, all sales in the ordinary course of trade are proper for consideration in ascertaining the price which fairly reflects market value. Sales in the home market and to third countries are in the ordinary course of trade and evidence of those prices are necessary for comparative purposes.

A statement made in the affidavit that "the actual profit made by the Company on this sale to Simon-Carter Company was not lower than the profit derived from similar sales in the United Kingdom and other countries" is a mere conclusory statement. Such statement is not a substitute for facts.

Plaintiff has for the foregoing reasons failed to establish export value.

Insofar as constructed value is concerned, we are also required to find, in the case of related parties, that such value fairly reflects the market value. The evidence adduced herein merely sets forth in plaintiff's exhibit 3 the cost of production including profit of the six machines involved. I must assume that a proportionate share of the non-incurred expenses is excluded from such figures. The record does establish that the exporter herein did sell such or similar machines

in the home market and to third countries. I have, however, no evidence as to what the cost of production or general expenses and profit are for such or similar merchandise which is sold in the home market or to third countries by the exporter herein. Without some comparative figures, it is not possible to determine if the figures contained in paragraph 18 of exhibit 3 do fairly reflect the market value.

In such a case, section 402(g) provides:

> * * * If a transaction is disregarded under the preceding sentence and there are no other transactions available for consideration, then, for the purposes of subsection (d), the determination of the amount required to be considered shall be based on the best evidence available as to what the amount would have been if the transaction had occurred between persons not specified in any of the subdivisions in paragraph (2).

Evidence as to the amount in transactions in the home market or to third countries which are not between related parties might well satisfy the above statutory requirements of section 402(g), *supra*.

Therefore, plaintiff has failed to overcome the presumption of correctness attaching to the appraised value.

Accordingly, on the record herein, I find as facts:

1. The imported merchandise involved in this appeal consists of certain purifiers exported by Henry Simon, Ltd., from England on or about December 4, 1964.

2. The said merchandise was appraised on the basis of constructed value as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. The said merchandise does not appear on the Final List, T.D. 54521.

4. At or about the time of exportation, the said merchandise was not freely sold or offered for sale for exportation to the United States to all purchasers at wholesale.

5. The said merchandise was sold for exportation exclusively to Simon Carter Co. of Minneapolis, Minn., a selected purchaser at wholesale.

6. The plaintiff has failed to prove that the claimed value of the invoice unit price plus packing, less 20 percent, is a price which, at or about the time of exportation, in the ordinary course of trade, fairly reflected the market value of the merchandise in the principal markets of England for exportation to the United States.

7. The Simon Carter Co. and the exporter, Henry Simon, Ltd., are related persons within the meaning of section 402(g), Tariff Act of 1930, as amended, *supra*.

8. The plaintiff has failed to prove that the amounts for materials, fabrication, and other processing which it alleges, represent the costs

of materials, fabrication, and other processing costs of any kind employed in producing such or similar merchandise, at a time next preceding the date of exportation which would ordinarily permit its production in the ordinary course of business and which amount fairly reflects the market value.

I conclude as matters of law:

1. Constructed value, as defined in section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the imported merchandise here involved.

2. Such value is represented by the appraised value.

Judgment will be entered accordingly.