NEW YORK CREDIT MEN'S ADJUST-
MENT BUREAU, INC., Trustee in
Bankruptcy for Townley Shirts, Inc.
and Cannon Point Manufacturing, Inc.,
et al., Plaintiffs,

v.

UNITED STATES, Defendant.

R.D. 11715; Reappraisement R63/11693
and 192 others.

United States Customs Court.
June 30, 1970.

Sharretts, Paley, Carter & Blauvelt, New York City (Gail T. Cumins, New York City, of counsel), for plaintiffs.

William D. Ruckelshaus, Asst. Atty. Gen. (Brian S. Goldstein, New York City and Ralph A. Bontempo, trial attys.), for defendant.

RAO, Chief Judge:

The merchandise involved in these appeals for reappraisement, consolidated at the trial, consists of men's and boys' cotton sport shirts manufactured in Jamaica, British West Indies, by Eton Mills, Ltd., and exported to the United States during 1961 through 1966 through the port of Miami, Florida.

The merchandise was appraised on the basis of constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. The appraisements were based on the invoice unit values per dozen plus the sum of $1.00 per dozen.[1]

Plaintiffs do not contest the fact that the proper basis of appraisement is constructed value, as defined in said section 402(d), and both parties agree that the merchandise does not appear on the Final List published by the Secretary of the Treasury, 93 Treas.Dec. 14, T.D. 54521.

Plaintiffs claim that the addition of $1.00 per dozen to the invoice unit prices was erroneous in that it represents costs

---

1. In entries made in 1965 and 1966, the importer added $1.00 per dozen to the invoice unit values to meet market value and the entries were appraised as entered. In a few cases appraisement was made at values other than the invoice values and $1.00 per dozen was added.

incurred after the merchandise was packed, ready for shipment to the United States, and forms no part of constructed value.

Defendant contends that the invoice unit price does not represent constructed value; that the manufacturer, Eton Mills Ltd., was related to the importers, Cannon Point Manufacturing, Inc., and its successor, Townley Shirts, Inc.; that the transactions between Eton Mills and the importers were disregarded by the appraiser by virtue of section 402(g) of the Tariff Act of 1930, as amended, and that the $1.00 addition was a portion of general expenses, i. e., marketing expenses, which would have been incurred by Eton Mills had it not been for the relationship between the manufacturer and the importers.

The pertinent provisions of section 402 of the Tariff Act of 1930, as amended, are as follows:

Section 402(d)

(d) *Constructed value.*—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordi-

nary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

\*   \*   \*   \*   \*   \*

Section 402(g)

(g) *Transactions between related persons.*—

(1) For the purpose of subsection (c) (1) or (d), as the case may be, a transaction directly or indirectly between persons specified in any one of the subdivisions in paragraph (2) of this subsection may be disregarded if, in the case of any element of value required to be considered, the amount representing that element does not fairly reflect the amount usually reflected in sales in the market under consideration of merchandise of the same general class or kind as the merchandise undergoing appraisement. If a transaction is disregarded under the preceding sentence and there are no other transactions available for consideration, then, for the purposes of subsection (d), the determination of the amount required to be considered shall be based on the best evidence available as to what the amount would have been if the transaction had occurred between persons not specified in any one of the subdivisions in paragraph (2).

(2) The persons referred to in paragraph (1) are:

(A) Members of a family, including brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants;

(B) Any officer or director of an organization and such organization;

(C) Partners;

(D) Employer and employee;

(E) Any person directly or indirectly owning, controlling, or holding with power to vote, 5 per cen-

tum or more of the outstanding voting stock or shares of any organization and such organization; and

(F) Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person.

The record consists of the testimony of John H. Lowery, Operations Officer, Classification and Value Division, United States Customs, Miami, Florida, and David M. Zala, an officer of Cannon Point, Townley Shirts, and Eton Mills, and several exhibits.

Mr. Lowery testified that he was responsible for the classification and appraisement of 135 of the entries involved herein. He was shown the papers accompanying appeal R63/11693 and stated that the red ink notations reflect the expression of his valuation of the merchandise; that the same would be true of the other entries; and that the appraiser followed his notations in appraising the merchandise. The red ink notation states "Appraised at invoice unit value, plus $1.00 dozen, packed." The "Notice of Action—Increase in Duties", received in evidence as exhibit 1, states:

Contemplated appraised value—at invoice unit value ($11.50 dz.), plus $1.00 doz. selling commission, packed.

NOTE: The same principle will apply to all subsequent importations of Cotton Shirts by your firm from Jamaica (Mfr. Eton Mills Ltd.)

The relationship between Eton Mills & Cannon Point is more than one of merely buyer & seller; both firms are owned by the same parties. If this relationship did not exist, Eton would of necessity incur the addional [sic] expense in marketing the shirts for export to the U.S. It follows that the markup added by Cannon point [sic] (so-called profit of $1.00 selling comm.) would be an element of Constructed Value & dutiable.

Mr. Lowery testified that he obtained the figure of $1.00 from Mr. Zala who called it a "selling commission" but that it was in actuality a marketing expense which would have been incurred by Eton Mills if it had been selling the merchandise. He said that the invoice value did not include any such expense; that such expense was assumed by Cannon Point, and that the dollar was added to reflect a general expense which would normally be incurred by a manufacturer in the sale of merchandise at arm's length. He said it referred to the expenses incurred by Cannon Point in selling the merchandise in the United States and was included in Cannon Point's markup.

According to the testimony of Mr. Zala, Eton Mills was a manufacturer of men's and boys' sport shirts; Cannon Point was an importer of such shirts, and Townley Shirts was a corporation engaged in the sale of such shirts and of ladies' blouses made in the United States. In the early 1960's Cannon Point was merged into Townley Shirts. The stockholders of all three corporations were Mr. Zala, Mr. Herbert Kass and Mr. Charles Kass. Subsequent to incorporation, John Camilleri became a stockholder of Eton Mills. Since Eton Mills had no credit rating, Cannon Point guaranteed the mortgage on the machines purchased for the manufacturing operation. Mr. Zala, representing Cannon Point, determined what its customers wanted and selected the type of piece goods to be used in making the merchandise. Eton Mills then purchased such piece goods from Japanese trading companies and manufactured shirts. It originally offered its product for sale by means of letters to various purchasers in the United States. However, no sales were ever made to anyone other than Cannon Point or Townley Shirts. The terms of sale were f. o. b. Kingston, Jamaica, net cash. The prices were established by taking the cost of materials and labor, overhead, insurance, and every cost that Eton Mills incurred, and adding a profit of about 40 cents per dozen.

Mr. Zala testified that he determined the price at which the goods would be sold in the United States by taking the landed duty-paid price, and adding one dollar, representing the administrative expenses, salaries, interest, and other costs incurred by Cannon Point in resale to retailers in the United States, plus a profit. Included in the landed costs were amounts for ocean or air freight from Kingston to Miami or New York, cost or freight bulk in Miami, cost of preparation of bill of lading and separation for cargo.

According to the record, the merchandise was usually shipped directly to Cannon Point's customers by Eton Mills, but Eton Mills did not have any contact with them. Cannon Point occasionally purchased merchandise which had not been sold already to United States purchasers and kept it in warehouse in Miami.

Payments for the merchandise by American customers were made to a factor in the name of Cannon Point. Payment by Cannon Point to Eton Mills was basically a bookkeeping transaction. Cannon Point paid for the initial shipments by offsetting the amounts of Eton Mills' invoice against the monies due from Eton Mills as payment for its machinery. When the machinery was fully paid for, the monies due Eton Mills were accumulated for it in a separate bank account. Cannon Point did not pay any bills of Eton Mills, but as money became due the latter, it was credited to its account from which it paid its bills.

Mr. Zala admitted that in a letter addressed by him to customs officials, he advised them that Cannon Point and Townley were selling agents for Eton Mills, but he testified that that was erroneous; that in fact Cannon Point was not a selling agent but purchased the goods from Eton Mills.

The question to be determined in this case is the proper constructed value of the merchandise. Constructed value, as defined in section 402(d), *supra*, is the sum of (1) the cost of materials and fabrication (2) the amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind and (3) the cost of containers and coverings and of other expenses incidental to placing the merchandise in condition for shipment to the United States.

The appraisements involved herein were made on the invoice unit prices plus $1.00 per dozen, packed. The amount of $1.00 represented an addition for marketing expenses. It is the only part of the appraisement which is being contested. Thus it can be presumed that the invoice unit price included the correct amounts for cost of materials and fabrication and the cost of containers and coverings and other incidentals, but that the amount for general expenses and profit was considered insufficient by the appraiser who added $1.00 to that component.

Apparently the $1.00 was originally added on the theory that it was a selling commission (exhibit 1). At the trial and in defendant's brief it was contended, however, that it represented a marketing expense rather than a selling commission. It is also claimed that Cannon Point by its bookkeeping methods absorbed an expense of Eton Mills, which was nevertheless an expense incurred by or attributable to Eton Mills. It is clear from the record that the $1.00 was not an actual expense of Eton Mills but represents what the appraiser considered a normal expense which the manufacturer would have incurred in selling for exportation to the United States to unrelated parties.

Plaintiffs do not dispute that Cannon Point, Townley Shirts and Eton Mills are related parties within the meaning of section 402(g) (2), *supra*. Therefore, plaintiffs must establish that the claimed values fairly reflect market values. Donald Schmidt et al. v. United States, 58 Cust.Ct. 584, R.D. 11259 (1967); Globe Shipping Co., Inc. v. United States, 63 Cust.Ct. 639, R.D. 11687 (1969).

Paragraph (1) of section 402 (g), *supra,* provides that a transaction between related parties may be disre-

garded if the amount representing any element of value required to be considered does not fairly reflect the amount usually reflected in sales of merchandise of the same general class or kind. Where in such a case there are no other transactions available for consideration, the determination of the amount is to be based on the best evidence available as to what the amount would have been if the transaction had occurred between unrelated parties. Evidence as to the amount involved in transactions in the home market or for exportation to third countries between unrelated persons may be presented to meet the statutory requirements. Globe Shipping Co., Inc. v. United States, *supra.*

In the instant case it is evident that the appraiser did not consider that the element of general expenses and profit fairly represented the amount usually reflected in sales of merchandise of the same class or kind. Therefore, appraisement was made on the basis of what the appraiser considered from the evidence then available to be the amount which would have been included in a transaction between unrelated parties, for which purpose $1.00 was added to represent marketing expenses.

■ Sales in other markets may be considered for comparison purposes to determine if the claimed value fairly reflects market value and plaintiff may show that expenses incurred therein are not applicable to sales in the market under consideration. United States v. Acme Steel Company, 51 CCPA 81, C.A. D. 841 (1964); John V. Carr & Son, Inc. v. United States, 52 CCPA 62, C.A.D. 860 (1965); C. J. Tower & Sons of Buffalo, Inc. v. United States, 58 Cust.Ct. 834, A.R.D. 223 (1967).

■■ In the instant case it appears from the evidence before the court that the $1.00 added by the appraiser included the administrative expenses, salaries, interest, and various other costs incurred by Cannon Point in reselling to retailers in the United States, together with a profit. The selling expense to be

included in constructed value by virtue of section 402(g) (1), *supra*, is that usually reflected in sales in the *market under consideration* of merchandise of the same general class or kind. Section 402(d) (2), *supra*, which defines constructed value, refers to sales made by *producers in the country of exportation.* It follows that the selling expenses which are properly part of constructed value are those incurred in selling the merchandise for exportation to the United States and not those for reselling within the United States. C. J. Tower & Sons of Niagara, Inc. v. United States, 61 Cust.Ct. 488, R.D. 11577 (1968) (expenses not shown to be incurred in export sales excluded in determining constructed value if not fixed expenses); John V. Carr & Son, Inc. v. United States, 50 Cust.Ct. 388, Reap. Dec. 10442 (1963) (distributor's markup not an element of cost of production within the contemplation of section 402a(f) of the Tariff Act of 1930, as amended). Accordingly, the expenses of resale in the United States and administrative costs and profit in connection with resale are not properly part of the selling expenses which are to be included in constructed value. While section 402(g) (1) provides that transactions between related parties may be disregarded, it does not provide that constructed value is to be determined by attributing all the expenses and profit of the importer to the exporter.

I conclude that the $1.00 which was added by the appraiser in the instant case covers more than an amount representing the marketing expenses of the manufacturer and includes items not properly part of constructed value. Therefore, the appraisements are erroneous.

■ Nevertheless, the burden still rests on the party attacking the appraisement to prove the correct dutiable value of the merchandise. Kenneth Kittleson v. United States, 40 CCPA 85, C. A.D. 502 (1952); Kobe Import Co. v. United States, 42 CCPA 194, C.A.D. 593 (1955). In the absence of such proof,

the appraised value, even though erroneous, must prevail. A. N. Deringer, Inc. et al. v. United States, 53 CCPA 135, C.A.D. 890 (1966).

According to the record herein, the invoice unit prices included the cost of materials and fabrication, overhead, insurance, and every cost incurred by Eton Mills, plus a profit. No further breakdown has been given to show what the costs represented or their amounts and it appears that the general expenses did not include any amount for selling costs. Since the merchandise was all purchased by a related company it may be that Eton Mills had no selling costs. It is unrealistic to suppose, however, that no marketing or selling expenses would have been incurred by the manufacturer in selling for exportation to the United States to unrelated parties. Therefore, it cannot be concluded that the invoice unit prices without any addition for selling expenses represents constructed value, as defined in section 402(d), *supra.*

The second component of constructed value is defined in said section as follows:

> (2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States;

■ In the instant case the plaintiffs have failed to establish the general expenses and profit usually reflected in sales of merchandise of the same general class or kind made by producers in the country of exportation, or the selling expenses of such producers. The record is silent as to whether or not there were other producers of men's shirts in Jamaica during the period of exportation herein, nor does it indicate that, if so, diligent effort was made to ascertain their general expenses and profit or even their marketing expenses. In fact

no evidence has been presented on which the court may base a finding of the expense which would ordinarily be incurred in selling the merchandise for exportation to the United States to unrelated persons. Had both the expenses included in the $1.00 added by the appraiser and the expenses of Eton Mills been broken down into their components more specifically, it may be that the court could have determined what amount should properly be allocated to selling costs of the merchandise under the constructed value provisions. Since no such evidence has been introduced, plaintiffs have not met their burden of proof and the appraised values must be sustained. C. J. Tower & Sons of Buffalo, Inc. v. United States, *supra.*

On the record presented, I find as facts:

1. That the merchandise involved herein consists of men's and boys' sport shirts manufactured in Jamaica, British West Indies, by Eton Mills, Ltd., and exported to the United States during 1961 through 1966 through the port of Miami, Florida.

2. That the merchandise was appraised on the basis of constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. That said merchandise does not appear on the Final List published by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521, pursuant to the Customs Simplification Act of 1956.

4. That the exporter, Eton Mills, Ltd., and the importers, Cannon Point Manufacturing, Inc., and its successor, Townley Shirts, Inc., are related persons as defined in section 402(g) (2) of the Tariff Act of 1930, as amended.

5. That the shipments made during the years 1961 through 1964 were appraised on the basis of constructed value at the invoice unit prices (or in a few cases other values) plus $1.00 per dozen, net packed. That the shipments made during 1965 and 1966 were appraised as

entered, since the importer added $1.00 per dozen to the invoice unit prices.

6. That the only item in dispute is the amount of $1.00 per dozen added by the appraiser as marketing expenses of the manufacturer.

7. That the said amount of $1.00 included the administrative expenses, salaries, interest, and other costs incurred by Cannon Point in reselling to retailers in the United States, together with a profit.

8. That the invoice unit prices included the cost of materials and fabrication, overhead, insurance, and every cost incurred by Eton Mills, plus a profit. That the evidence does not include any further breakdown as to the costs represented or their amounts nor does it show that there was included any amount for selling costs.

9. That no evidence has been presented to show whether or not there were other producers of men's shirts in Jamaica during the period involved herein, and, if so, whether diligent effort was made to ascertain their general expenses and profit or their marketing expenses.

10. That no evidence has been presented from which the court may determine the expenses which would normally be incurred in sales of the merchandise for exportation to the United States to unrelated persons.

I conclude as matters of law:

1. That constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise involved herein.

2. That the addition of $1.00 per dozen to the invoice unit prices was erroneous in that it covers more than an amount representing the marketing expenses of the manufacturer and includes items not properly part of constructed value.

3. That plaintiffs have failed to establish the general expenses and profit or the selling expenses usually reflected in sales of merchandise of the same general class or kind as that undergoing appraisement.

4. That since no other values have been established, the appraised values must be sustained.

Judgment will be entered accordingly.