BRANIFF AIRWAYS, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 75-3-00646

(Decided July 14, 1981)

*Arnold & Porter* (*Kenneth A. Letzler* at the trial; *Paul S. Berger* with him on the briefs) for the plaintiff.

*Stuart E. Schiffer*, Acting Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Saul Davis* at the trial and on the brief), for the defendant.

BOE, *Judge:* Subsequent to the entry of a prior order of this court in the above-entitled action denying a motion to grant judgment on the pleadings and on an accompanying stipulation of facts, the parties again have submitted the within action for determination and judgment predicated upon the prior proceedings before this court, Plain-

---

[1] Neither defendant nor the intervenor responded to plaintiff's motion for a protective order.

tiff's Exhibit 1, and a further stipulation executed by the parties hereto under date of March 26, 1981, Plaintiff's Exhibit 2.[1]

From the pleadings, the stipulations between the parties and the affidavits submitted by the plaintiff, Exhibits 3 and 4, the following facts are deemed germane to a determination of the issue presented and sufficient to permit an adjudication thereof.

The subject merchandise consists of 13 BAC One-Eleven Jet Passenger Aircraft manufactured by the British Air Corporation (hereinafter referred to as BAC) in the United Kingdom, imported therefrom by the plaintiff and entered at the port of Newark, New Jersey between March 1965 and January 1966. In the purchase agreement entered into between the plaintiff and BAC, it was agreed that 10 percent of the total purchase price for each aircraft represented the cost of the "services," "warranties," "taxes," "liabilities" and "indemnities" furnished by the seller to the buyer as well as the amount of the agency commissions payable by BAC in connection with the sale of the aircraft to the plaintiff. Plaintiff's Exhibit 1 (Exhibit A, Article III). Included in the appraised value of each aircraft, set forth with particularity in plaintiff's complaint, is the sum of $57,115 attributable to the cost of warranties relating to the correction and rectification of defects in the aircraft by BAC pursuant to the specific provisions of the purchase agreement. The correction of the defects to be performed by BAC within a defined period of time might be made in the United Kingdom as well as in the United States depending upon circumstances and the options specified in the purchase agreement.[2] The warranty provisions contained in the purchase agreement relating to the imported aircraft were negotiated at arms length between the parties possessing relatively equal bargaining power and economic strength.

From the further stipulation submitted by the parties in connection with the present proceeding, Plaintiff's Exhibit 2, it is established that:

1. At all relevant times, there were in the country of exportation no other producers of merchandise of the same general class or kind as that at issue in this case; * * *

The parties are in agreement that the appraisement of the subject aircraft properly was made on the basis of constructed value pursuant to section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (19 U.S.C. 1401a(d)) providing:

(d) Constructed value.

---

[1] The order denying judgment on the pleadings and an accompanying stipulation of facts was denied by this court under date of November 14, 1979 on the grounds that a genuine issue of material facts remained in connection with the review of the appraised constructed value of the merchandise in question. An order denying a motion for rehearing by the defendant was entered on January 17, 1980.

[2] Plaintiff's Exhibit 1 (Exhibit A, Article VI, Sections 6.01, 6.02 and 6.03).

For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidential to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

It is undisputed that the sum of $57,115 is the amount attributable to the cost of the warranties included in the appraised valuation of the subject aircraft by the Customs Service. Thus, the sole question to be determined herein is whether the said sum has properly been included in the appraised constructed value.

Counsel for the plaintiff, placing great reliance on the fact that the correction of any defects in the subject aircraft by BAC is (1) contingent in character and (2) may be physically performed in the United States after importation, contends that the warranty in essence is similar to a service contract and/or an insurance policy guaranteeing repair of the aircraft after importation into the United States. It, accordingly, follows, the plaintiff urges, that the warranty is not a "general expense" in connection with the manufacture of the subject aircraft within the contemplation of the statute.

Although, for the reasons hereinafter stated, a determination as to whether a warranty of the character in issue is a "general expense" is unnecessary to the adjudication of the instant action, the court is reluctant to accept without comment the foregoing arguments urged by the plaintiff. The obligation of BAC as the manufacturer of the subject aircraft to correct and rectify the defects in the design and construction of each respective aircraft, as well as to replace the defective materials found to exist therein, became a binding obligation at the time the purchase agreement was executed with the plaintiff. It was an obligation in praesenti to rectify the defects which might be found to exist in the aircraft manufactured by BAC when such defects in design, materials or workmanship became evident within the periods

of time specified in the purchase agreement. The warranty and the obligation created thereby became an integral part of each aircraft manufactured by BAC. It is difficult for the court not to view the warranty provisions as an inducement to effect the sale of the subject aircraft to the plaintiff. The respective warranty provisions, initially proposed by BAC and the plaintiff during the negotiations relating to the purchase agreement, would appear to evidence the significant part a warranty may play in consummating the transaction at a purchase price which the plaintiff as a buyer was willing to pay.

"General expenses and profit," as provided for in the statutory provision are neither related nor restricted solely to the manufacture of the merchandise in question. As the statute specifically mandates, the component which is a part of constructed value includes the "general expenses and profit" which have been incurred in the *sale* of the merchandise for shipment to the United States. *New York Credit Men's Adjustment Bureau, Inc.* v. *United States*, 64 Cust. Ct. 770, 314 F. Supp. 1246 (1970); *United States* v. *C. J. Tower & Sons of Buffalo, Inc.*, 60 CCPA 46, 470 F. 2d 1393 (1972).[3]

In light of the stipulation offered by the respective parties in the present proceedings, Exhibit 2, establishing that there are no producers of the same general class or kind as the subject aircraft from which the amount of general expenses and profit are usually reflected in the sales of such merchandise for shipment to the United States can be ascertained, the actual general expense and profit of BAC necessarily are accepted. *United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407 (1949); *English Electric Export and Trading Co.* v. *United States*, 53 CCPA 84, C.A.D. 881 (1966).

From Plaintiff's Exhibits 3 and 4, consisting of affidavits relating to the customary accounting procedures used by BAC, it appears that at the time of export of each aircraft a reserve account for warranty expenses was established by making a charge against income. As stated in paragraph 11 of Plaintiff's Exhibit 3 and in paragraph 8 of Plaintiff's Exhibit 4, "[a]ctual warranty expenses were charged against the reserve as the expenses occurred after export." Thus, although the record provides the procedure by which accounting was conducted by BAC in connection with the manufacture and sale of the subject aircraft, it, however, remains silent with respect to the amount of the reserve charged against income as well

---

[3] In the *Tower* decision our appellate court emphasized that in the statutory provisions for the determination of constructed value. Congress has specified that the amount for general expenses and profit shall be equal to the amount reflected in " 'sales of merchandise * * *. *for shipment to the United States.*' Emphasis added." 60 CCPA at 52. Although impliedly recognizing warranty costs as expenses, the appellate court affirmed the determination of the trial court that the warranty costs had not been incurred by the manufacturing company (Studebaker of Canada) and, accordingly, the amount of such expenses were not properly a part of the cost of production.

as the specific and actual warranty expenses charged against the reserve.

If the sum of $57,115 of the appraised valuation of each aircraft, attributed by the Customs Service to be the cost of warranties thereon to BAC, is not properly included as a "general expense" then such sum must remain as income and profit, derived from the purchase price paid by the plaintiff, until such time the plaintiff has established the amount of the expenditures made by BAC in the performance of its warranty obligations. As has been succinctly stated in the case of *United States* v. *Alfred Dunhill of London, Inc.*, 32 CCPA 187, C.A.D. 305 (1945), "profit is calculated on the difference between such expenses and receipts."

Although the result of the decision of our appellate court in the case of *English Electric Export and Trading Co.* v. *United States*, 53 CCPA 84, C.A.D. 881 (1966) was a reduction of the appraised constructed value of the subject merchandise therein, the reasoning of the appellate court in that decision is deemed applicable. In the *English Electric* case certain generators imported from England into the United States were tested after importation and found to be defective. A "credit for penalty" relating to the contract price for the generators had been accepted by the company because of a failure of the merchandise to meet temperature requirements specified in the contract. In holding that the penalty constituted a reduction in the profit of the manufacturer, our appellate court stated:

> Since the appraisement here is on the basis of the profit item in the cost of production being the profit actually added, the penalty sum amounts to a reduction in the actual profit and should have been subtracted from the appraised value. The fact that the transaction involving the penalty occurred after exportation presents no difficulty since it did occur in time for evidence regarding it to be submitted to the Trial Court. 53 CCPA at 89–90.

Unlike the proof provided in the *English Electric* case, the plaintiff in the instant action has neither provided the Customs Service nor this court any evidence relating to the expenditures which may have been made by BAC pursuant to its contractual obligations to correct and rectify defects occurring in the manufacture of the subject aircraft. The appraised valuation was made seven years after the importation of the aircraft in question. Ample opportunity has been afforded plaintiff, after the expiration of the warranty periods, to apprise the Customs Service of the expenses incurred by BAC or at the very least the defects discovered in each aircraft corrected by BAC under the terms of the purchase agreement. In the absence of such

proof this court can only deem the sum of $57,115 to constitute "profit" and, accordingly, a part of the constructed value of the aircraft in question.

Upon the plaintiff rests the burden to prove the correct dutiable value of the subject aircraft. *A. N. Deringer, Inc.* v. *United States*, 53 CCPA 135, C.A.D. 890 (1966); *United States* v. *Cavalier Shipping Co.*, 56 CCPA 117, 412 F. 2d 245 (1969).

The plaintiff having failed in its burden to rebut the presumption of correctness attaching to the appraisement of the subject aircraft on the basis of constructed value, the appraised valuation as determined by the Customs Service is affirmed and the above-entitled action, accordingly, is hereby dismissed.

Let judgment be entered accordingly.