60 CCPA

The **UNITED STATES,** Appellant.

v.

**C. J. TOWER & SONS OF BUFFALO, INC.,** Appellee.

**Customs Appeal No. 5439.**

United States Court of Customs and Patent Appeals.

Dec. 29, 1972.

As Modified on Denial of Rehearing April 19, 1973.

**1394**

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Glenn E. Harris, New York City, for the United States.

Barnes, Richardson & Colburn, New York City, attorneys of record for appellee; Joseph Schwartz, New York City, of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

BALDWIN, Judge.

This appeal is from the decision and judgment of the United States Customs Court, First Division, Appellate Term,[1] reversing the decision and judgment of the trial court[2] and thereby overturning the appraised values of certain imported automobiles and sustaining appellee's claimed values.

Involved are a total of 48 Studebaker automobiles, 1964 and 1965 models, together with certain factory-installed optional equipment added to the basic vehicles. The automobiles were produced by Studebaker of Canada, Ltd., and sold to Studebaker Automotive Sales Corporation, of South Bend, Indiana (hereinafter SASCO). Both the exporter and SASCO were wholly owned subsidiaries of Studebaker Corporation of South Bend. The imported cars were identical to corresponding models of Studebaker cars manufactured for home consumption in Canada.

The completed automobiles are on the Final List published by the Secretary of the Treasury, T. D. 54521, and the parties agree that the proper basis for determining their value is "cost of production" under section 402a(f) of the Tariff Act of 1930, 46 Stat. 709, as renumbered by the Customs Simplification Act of 1956, 70 Stat. 943, T. D. 54165. That section reads:

(f) Cost of Production.—For the purpose of this subtitle the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or

---

1. 65 Cust.Ct. 792, 318 F.Supp. 768, A.R.D. 277 (1970).

2. 62 Cust.Ct. 822, 295 F.Supp. 1104, R.D. 11630 (1969).

producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The record includes testimony of six witnesses for appellee and a number of documentary exhibits setting out figures, originating with appellee, constituting a breakdown of items of expenses incurred in producing the vehicles during the pertinent time period. There is no dispute as to the actual figures or amounts of the cost items but the issue lies primarily in whether (1) expenses relating to vehicles made for home consumption, or (2) expenses relating to vehicles made for export to the United States, should be used in calculating statutory cost of production. The parties stipulated that more cars were exported by Studebaker of Canada to the United States "during 1964 and the period involved in these proceedings" than were sold by Studebaker of Canada in the Canadian home market.

The trial court summarized the actions of the appraiser as to the basic automobiles as follows: (a) he calculated, for purposes of paragraph (1) of section 402a(f), the costs of labor, material, manufacturing overhead, tooling and engineering covering the manufacturer's export operations; (b) he calculated, for purposes of paragraph (2) of the section, the costs of warranty, selling, advertising, and administrative expenses covering the manufacturer's home market operations, and (c) he calculated, for purposes of paragraph (4) of the section, the actual profit realized by the manufacturer in its home market operations, except that where the amount fell below the statutory minimum of 8%, he added that minimum Nothing was added pursuant to paragraph (3) of section 402a(f) because there was no packing involved.

The appraised value of the optional equipment was determined on the basis of the manufacturer's selling prices to Canadian franchise dealers. Where such prices did not reflect the minimum statutory profit, such minimum profit was included.

The trial court rejected the importer's appeal to reappraisement and found the cost of production values to be the appraised values. It agreed with only one of several objections of the importer— that manufacturing overhead constituted a part of general expenses of paragraph (2) of the statute rather than of paragraph (1). However, this in itself made no difference in the total appraised value.

On appeal, the First Division found the appraisement in error in all respects charged by the appellee here. It first agreed with the trial court that the manufacturing overhead properly belonged in paragraph (2) of the statute. It held that "warranty," "selling expense" and "advertising expense" were improperly included in the appraisement,

agreeing with appellee's contention that the evidence showed that warranty expense was not borne by the manufacturer but was assumed by the importer, and that the manufacturer had no selling or advertising expense on the cars exported to the United States. The proper administration cost to be included in general expenses was held to be that incurred in connection with the exported vehicles, as claimed, instead of with vehicles sold in the home market, as assessed. The First Division further held that the appraisement was incorrect in basing the "addition for profit" of paragraph (4) on the profit realized in the Canadian market. The court was of the opinion that profit should instead be based on the difference between the "U. S. export cost" asserted by appellee and the invoice price of each car.

As to the optional equipment, appellee contended that the statutory cost of production was the net cost of materials only, because no additional labor costs were incurred as a result of the installation of the optional equipment. The First Division agreed with the appellee.

## Opinion

■ The only dispute relating to paragraph (1) of section 402a(f) is whether "manufacturing overhead" was improperly included as part of the cost of materials, fabrication, manipulation, etc. in the appraised value or should be included instead under usual general expenses of paragraph (2) as held in both decisions below. The record shows that the "manufacturing overhead" had been calculated to include "utility expenses, insurance, taxes, depreciation of equipment, supervision, repairs and maintenance, [and] miscellaneous items." Appellee argues that these expenses are more naturally attributable to general output than to unit cost and thus are more properly part of general expenses than of paragraph (1) costs. It relies particularly on the definition of "overhead" for accounting purposes as "gen-

eral charges or expenses, collectively, in any business which cannot be charged up as belonging exclusively to any particular part of the work or product" of which "taxes, insurance, lighting" are specified as examples.[3]

■ We find no error of law in the holding below regarding "manufacturing overhead" and will not disturb it. Appellant cites works on accounting practice as indicating that the item was properly treated in the assessment. But even if it be assumed that those works are properly before us, it would clearly be beyond the proper scope of our review to weigh the conflicting evidence. See United States v. North American Asbestos Corp., 48 CCPA 153, 155, C.A. D. 783 (1961).

■ As to the other items of general expenses of paragraph (2), the findings of the First Division that Studebaker of Canada did not incur any warranty costs on the imported automobiles and that the selling and advertising costs reflected in the appraisement applied only to the home market are clearly supported by the record. The question to be decided was regarded by the First Division to be "whether, under * * * [section 402a(f)], the proper dutiable value is the cost of producing the merchandise exported to the United States, plus the overhead or profit on the exported merchandise, rather than cost of producing 'such or similar merchandise' for home consumption." The court's conclusion that warranty, selling and advertising costs were not properly included in the appraisement was the result of its answering that question in the affirmative.

As pointed out by the First Division, the trial court seems to have predicated its determination that the expenses associated with the merchandise for home consumption should apply largely on the view that "it [was not] unreasonable for an appraising officer to question, as to costs, the *bona fides* of invoice prices

---

3. Webster's New International Dictionary, 2d Edition, Unabridged (1959).

for merchandise passing between the subsidiaries" of the same parent company. It cited John V. Carr & Son, Inc. v. United States, 52 CCPA 62, C.A.D. 860 (1965), as authority for questioning a cost accounting system which "does not 'choose' to allocate to export operations a fair proportion of overhead expenses relating to cost of production which are reasonably and normally chargeable to export operations."

The First Division, on the other hand, found nothing in the record to overcome what it regarded as adequate evidence that the present transactions represented actual sales. It further found the *Carr* case not applicable, noting that it applied to different facts, concerned "constructed value" as defined by section 402(d) of the Tariff Act of 1930 as amended by the Customs Simplification Act of 1956, *supra*, (the "new" law applying to articles not on the Final List) rather than "cost of production," and involved section 402(g) of the "new" law, which provides for disregarding sales between related persons under specified circumstances.

We find no error in the determination of the First Division that the warranty, selling and advertising expenses should not be included in the value of the present merchandise. In the first place, its treatment of the transactions as *bona fide* sales finds support in the record, there being unrefuted testimony of the President of Studebaker of Canada to that effect.

As to the exclusion of the expenses in question from calculations under paragraph (2) of section 402a(f), the introduction to the section appropriately states that what is defined in the section is "the cost of production of *imported merchandise*." (Emphasis added.) Also, as pointed out by appellee, both the Ways and Means Committee of the House of Representatives and the Finance Committee of the Senate, referring to the cost of production provisions of the Tariff Act of 1930, stated:

"Cost of production" is the cost of producing the *imported article* abroad, with an addition for profit. [H. Rep. No. 7, 71st Cong., 1st Sess., on H.R. 2667, at page 167 (May 9, 1929); S. Rep. No. 37, 71st Cong., 1st Sess., on H. R. 2667, at page 69 (Sept. 4, 1929), Emphasis added.]

While the specific issue here is one of first impression, prior decisions reveal interpretation of the cost of production statute to avoid the inclusion of costs or expenses that are not attributable to the exported merchandise. In United States v. Alfred Dunhill of London, Inc., 32 CCPA 187, C.A.D. 305 (1945) a British "purchase tax" that was payable only when the goods were sold in England for home consumption was held not to be part of the "usual general expenses" under the "cost of production" statute. In Stockheimer and Harder v. United States, 58 Cust.Ct. 801, A.R.D. 218 (1967), a French social security tax which was rebated to the manufacturer on goods that were exported was held not to be a proper component of the usual general expenses entering into cost of production. See also Gehrig Hoban and Co. v. United States, 57 Cust.Ct. 727, A.R.D. 210 (1966).

Of some additional significance is the provision for "constructed value" which effectively replaces "cost of production" in the new law applicable to merchandise not on the Final List.[4] Congress there specified that the amount for general expenses and profit be equal to that reflected in "sales of merchandise * * *, *for shipment to the United States*." Emphasis added.

These same principles that require exclusion of the warranty, sales and advertising expenses from the general expenses for the imported automobiles apply to administrative expenses. We therefore find that the First Division did not err in holding that the ad-

4. Section 402(d) of the Tariff Act of 1930 as amended by the Customs Simplification Act of 1956, T.D. 54165.

ministrative expenses applicable here are those from "U.S. export cost" figures in the record rather than from "home market cost" figures.

■ Turning to the matter of the profit which ordinarily is added under paragraph (4) of the statute, it is undisputed that appellee has demonstrated that it was unable to obtain information on the profit added by other manufacturers of automobiles in Canada. Our previous determination that the transactions here must be considered actual sales, leaves the question whether the "profit which ordinarily is added" is (1) the profit made by Studebaker of Canada in the home market or (2) that made on the cars imported to the United States. The First Division found this question resolved by United States v. International Expediters, Inc., 40 CCPA 148, C.A.D. 511 (1953). There the merchandise, artist's colors in tubes, was sold to wholesalers at a discount of 40 percent and to retailers at a discount of 33⅓ percent, resulting in two different profit figures. The court ruled that the profit on sales to wholesalers constituted the profit ordinarily added under the statute because such sales were shown to involve the major quantity of the merchandise sold. On the basis of the stipulation that more cars were exported by Studebaker of Canada than were sold in the home market during the relevant period, the First Division ruled that the profit made on the exported cars applied here.

Appellant urges that *International Expediters* is not "directly applicable" here, asserting that sales to SASCO "at greatly depressed prices" do not form a realistic basis for determining the profit ordinarily added. However, our conclusion that the First Division did not err in finding that actual, *bona fide* sales to SASCO were involved under the applicable law leaves any contention of significant factual difference to *International Expediters* without substance. Hence no error of law is seen in the First Division's determination regarding the calculation of profit.

The First Division held that "uncontroverted evidence of appellant establishes that the cost of production of the optional equipment is the cost of materials only." Appellee's position is that "unrefuted testimony of appellee's witness Donald * * * constitutes substantial evidence to support * * * [that] finding * * *." Donald, an accountant, expressed the opinion that "cost of production for optional equipment is the material cost only," giving the following reason:

> Because the other elements of cost, the labor and the overhead which you might normally associate with additional equipment, have been absorbed in the base cost of the car, consequently, there is only the material cost left.

■ That reasoning, in effect, only advanced another opinion or conclusion to support the first. Cost of labor is a component of statutory cost of production under item (1) of section 402a(f) and there is no substantial evidence to establish that cost as a matter of fact with regard to the optional equipment.

Appellee did urge at the trial that there is no additional labor cost in installing optional equipment, arguing that "[i]t doesn't cost them any more in labor to put in an automatic transmission than it does a standard transmission." Not only does argument not take the place of evidence, but the fact that the optional equipment here includes items installed by the manufacturer, such as radios, side-view mirrors and undercoatings, which do not replace other equipment, leaves the plausibility of the argument in serious doubt. Clearly, the presumption of correctness of the appraised values for the optional equipment has not been overcome, and the First Division erred in ruling to the contrary.

The decision and judgment of the Customs Court is affirmed as to the ba-

sic automobiles and is reversed as to the optional equipment. The appeal is remanded to the Customs Court for further proceedings consistent with this opinion.[5]

Modified and remanded.