ORBISPHERE
CORPORATION, Plaintiff,

v.

The UNITED STATES, Defendant.

Court No. 87–02–00404.

United States Court of
International Trade.

May 14, 1991.

Barnes, Richardson & Colburn, James S. O'Kelly, Despina Keegan, New York City, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Mark S. Sochaczewsky, New York City, for defendant.

OPINION

MUSGRAVE, Judge.

In the motion presently under consideration in this appraisal or valuation action, plaintiff contests certain aspects of the Customs Service's valuation of plaintiff's products on remand from an earlier order of this Court. Plaintiff alleges that in revaluing its merchandise on the basis of the "deductive value" of that merchandise, as ordered by the Court and as opposed to the earlier valuation on the basis of "transaction value", Customs improperly failed to subtract from the deductive value amounts of certain commissions, profits, and expenses involved in the sales as required by statute. Defendant argues that its failure to subtract those amounts was justified because the three items at issue—the com-

missions, profits and expenses—did not qualify as deductible under the applicable statute.

## BACKGROUND

Customs originally appraised the merchandise at issue (oxygen analyzing equipment) using the "transaction value" measure provided in 19 U.S.C. § 1401a(b). Customs chose that measure based on its argument that while plaintiff, an American corporation, purported to have itself concluded the sales of the appraised merchandise to the American purchasers, in reality it was plaintiff's foreign manufacturing branch in Switzerland that alone was authorized to, and in fact did, conclude contracts for sale of the merchandise in the United States. Plaintiff argued that it was the U.S. entity that concluded the sales, that there were thus no export sales to the U.S. purchasers, and that the proper measure for appraisal therefore was "deductive value" under section 1401a(d). In a prior opinion in this action, *Orbisphere Corp. v. United States,* 13 CIT ——, 726 F.Supp. 1344 (1989), this Court found in favor of plaintiff and instructed Customs to re-appraise the merchandise using the deductive value measure. On remand, Customs computed the deductive value of the merchandise by using the prices of the merchandise in plaintiff's U.S. price lists for the relevant period and making deductions therefrom for certain selling costs as prescribed by section 1401a(d)(3)(A). Customs deducted 30.96 percent from the value of imports of the merchandise imported in 1985, and 33.- 28 percent from the value of 1986 imports. Plaintiff contests Customs's failure to also deduct from the U.S. prices other general expenses and amounts for profits as allegedly required by the same statutory section. Defendant responds that the other general expenses plaintiff seeks to have deducted from the U.S. price were not incurred "in connection with" the sales at issue as allegedly required by law to be deductible; defendant further responds that according to the facts as stated in the Court's prior opinion, plaintiff realized no profits on the U.S. sales at issue, and that

therefore none may be deducted from the U.S. sales prices.

### A. *Controlling Statutes*

Section 1401a(d)(2)(A)(i), under which the merchandise was appraised pursuant to the earlier opinion, defines "deductive value" as,

the unit price at which the merchandise concerned is sold in the greatest aggregate quantity at or about [the date of importation].

Paragraph (3)(A) of that section prescribes a number of downward adjustments to the unit price stated above, including the following at issue in this case:

The price determined under paragraph (2) shall be reduced by an amount equal to—

(i) any commission actually paid or agreed to be paid, or the addition usually made for profit and general expenses, in connection with sales in the United States of imported merchandise that is of the same class or kind, regardless of the country of exportation, as the merchandise concerned....

Sub-paragraph (B) of paragraph (3) further provides, for purposes of applying the above adjustment,

(i) the deduction made for profit and general expenses shall be based upon the importer's profits and general expenses, unless such profits and general expenses are inconsistent with those reflected in sales in the United States of imported merchandise of the same class or kind, in which case the deduction shall be based on the usual profit and general expenses reflected in such sales, as determined from sufficient information....

### B. *Customs's Position*

#### 1. Expenses Deductions

In making its subtractions from the deductive value of the appraised merchandise, Customs relied on two documents submitted by Orbisphere, part of the Court file, which detail Orbisphere's "direct expenses in the U.S.A." for the years 1985 and 1986. In response to requests from

Customs, Orbisphere provided further information to support the data in the two documents, and a Customs auditor visited Orbisphere's Emerson, New Jersey office to review the information. Subsequently, Customs received from the company additional supporting documents. Customs made the deductions described above on the basis of the costs listed in the submitted documents in the category titled "Selling Expenses", and Customs does not question the accuracy of any of Orbisphere's expenses data.

However, Customs refused to deduct any of the expenses listed in categories other than that for "Selling Expenses". Those other expenses include the following: salary and expenses for travel to the United States for Orbisphere's President, H. Dudley Wright; fees for U.S. accounting services; fees for U.S. legal expenses; fees, and expenses of travel to Geneva, for Professor Richard P. Feynman; "director's fees" for Richard Alberding; and expenses for "Geneva Based Travel in U.S." of three persons listed as I. Bales, Dr. J. Hale, and B. Brinkers. In refusing to deduct these expenses from the merchandise's deductive value, Customs reasons that paragraph (3)(A) of section 1401a(d) directs that a deduction be made for general expenses "in connection with sales in the United States"; Customs contends that the expenses not deducted were not incurred in connection with Orbisphere's U.S. sales of the appraised merchandise, and that therefore the deductive value of the merchandise should not be reduced by the amount of those expenses.

### 2. Profits Deductions

At the trial in this case, Orbisphere's controller, Mr. John Franklin, testified that the company's New Jersey office, which made the sales at issue, was "not a profit center" but instead was a "cost center", in that it "funneled" all of its revenues in excess of operating costs and overhead to the Switzerland office. Trial Transcript at pp. 77–78; *see* 726 F.Supp. at 1345. On the basis of that statement, Customs argues that Orbisphere's New Jersey office "realized no profit from the sales of the mer-

chandise in the United States." Opposition at 5. Customs emphasizes the facts that the Court noted this characteristic of the New Jersey office in its earlier opinion and ordered Customs to re-appraise the merchandise "in accordance with" that opinion, and contends that to do so, it is prevented from deducting profits that the Court allegedly found not to exist.

### C. *Plaintiff's Position*

Plaintiff does not submit a very elaborate challenge to Customs's re-appraisal but, rather, simply argues that the expenses excluded by Customs are among those "expenses associated with doing business" that have been held to be included in the general expenses stated in the statute to be deductible. Plaintiff's Memorandum in Support of its Motion [for rejection of Customs's re-appraisal] ("Memorandum") at 4 (citing *United States v. Alfred Dunhill of London, Inc.*, 32 CCPA 187, 189 (1945)). Plaintiff also notes that profit margin percentages are provided in the lists of "direct expenses", discussed above, upon which Customs relied in its re-appraisal. Because Customs has not, either at or since the trial, challenged the accuracy of those figures, plaintiff contends that Customs is required to reduce the deductive value of the appraised merchandise by the amount of those profits pursuant to the above statutes.

The brevity of plaintiff's challenge of the re-appraisal is likely explainable by the fact that Customs apparently did not state the bases for its refusal to make the adjustments requested by plaintiff at any time before filing its Opposition in this action (Customs's report to this Court of the remand results does not state these bases); thus, plaintiff may not have been aware of the reasons for Customs's refusal until after plaintiff filed its Memorandum herein.

### ANALYSIS

### 1. Expenses Deductions

The correctness of Customs's refusal to deduct the expenses at issue depends upon both its interpretation of the "in connection

with" phrase in the statute involved and its characterization of the particular expenses at issue in this case.

### a) *The requisite connection*

Beginning with the language of the statute, section 1401a(d)(3)(A)(i) directs that deductive value shall be reduced by the amount of

> any commission usually paid or agreed to be paid, or the addition usually made for profit and general expenses, in connection with sales in the United States of imported merchandise

of the same kind as that being appraised. The principal question concerning this section in the present case is what kind of connection must be shown between the items of expenses or profits to be deducted and the U.S. sales of the imported merchandise. The Court's research reveals no judicial precedent construing this section's "connection" requirement and almost none construing the section at all, and the parties have cited none.

There is limited precedent involving the deduction for profits and general expenses under the prior version of the statute. That prior version differed in some ways from the present section, but the divergence does not seem to be sufficiently great to diminish substantially the authority in the present situation of decisions rendered under the prior version. The precursor to the present deductive value measure, under the 1930 Tariff Act before its amendment effective in 1981, was "United States value", defined, in parts relevant for the present circumstances, by section 1401a(c) of the prior title 19 as,

> the price, at the time of exportation to the United States of the [appraised] merchandise, at which such or similar merchandise is freely sold or ... offered for sale in the principal market of the United States for domestic consumption, packed ready for delivery, in the usual wholesale quantities and in the ordinary course of trade, *with allowances made for—*
>
> (1) any commission usually paid or agreed to be paid, or the addition for profit and general expenses usually made, *in connection with* sales in such

market of imported merchandise of the same class or kind as the [appraised] merchandise....

(Emphasis added.) The only significant difference between this part of the prior version and the corresponding part of the present version is that in the prior version the adjustment is phrased as, "with allowances for [profits and general expenses]", while the present version directs that the gross U.S. sale price "shall be reduced by an amount equal to" those profits and expenses. (There is also the seemingly inconsequential change whereby in the present version the words "usually made" are moved from their previous position directly after the word "expenses" to their present position directly before the words "for profit".) Both versions describe identically the expenses and profits to be allowed for as those added to the price of the subject merchandise "in connection with" U.S. sales of imported merchandise of the same class or kind; thus, the requisite "connection" appears to be identical in the two versions.

In *Hill Brown Corp. v. United States*, 54 CCPA 99 (1967), the United States appellant importer was engaged in three different business operations, manufacturing one product domestically for domestic sales and importing two other product lines for domestic sales, one of the latter two of which was the product whose valuation was at issue. The appellant proposed United States value as the proper measure for appraisal and sought to establish that value of the imports at issue by deducting from their selling price amounts for "overhead expenses"; it calculated the amounts of those deductions by first determining the ratio of the sales of the product at issue to the total sales of all products by the appellant, and then applying that ratio to its total overhead for all sales.

The Court of Customs and Patent Appeals affirmed the Customs Court's rejection of the appellant's methodology, in which the Customs Court had emphasized the lack of

> any evidence to show that in the processing and marketing of the merchandise at

bar, operating costs were proportionately the same as the operating costs for conducting the other phases or [*sic*, "of"] [appellant's] business, however that proportion might be determined.

54 CCPA at 102. The Appellate Term had agreed also, stating,

> The practice of apportioning operating expenses equally among all phases of a company's business operations, in lieu of the actual operating expenses incurred by a particular phase of business being inquired into, has not met with judicial approval.

See *id.* Similarly, the Court of Customs and Patent Appeals stated that

> the three types of operations engaged in by appellant may be susceptible of different percentages of general expenses or overheads and profits.

*Id.* at 103. For these reasons, the CCPA affirmed the trial court's finding that the appellant had failed to demonstrate with sufficient accuracy the amount of its total overhead that was attributable to (and thus, presumably, added in the prices of) its sales of the particular imported merchandise at issue. While the CCPA did not expressly refer to the phrase "in connection with", it seems clear that it was on the basis of that phrase that the three courts required a particularized, accurate apportionment to the sales at issue of the portion of the total expenses connected with those sales.

*National Carloading Corp. v. United States*, 60 CCPA 54, 469 F.2d 1398 (1972) involved essentially the same facts, and produced the same result, as did *Hill Brown.* In *National Carloading*, the CCPA upheld a Customs Court finding that an importer had not presented sufficient evidence to support a deduction from its U.S. selling prices of amounts for general expenses and profits when the importer

> constructed the formula [for markup] on the basis of [the product at issue] in terms of total sales and based on the total operating expenses of the company and total sales of [the company's] operation, pro rated in terms of sales of [the product at issue].

60 CCPA at 58. In rejecting that rough apportionment methodology, the CCPA stated,

> [I]t appears that [the importer] sells a variety of goods. There is no indication that in fixing the markup for the [particular product at issue] the importer isolated and included only the general expenses, and similarly, profit, attributable to the sale of this class of goods.
>
> \*　\*　\*　\*　\*　\*
>
> This is precisely the procedure found wanting in *Hill Brown,* and, like the record in *Hill Brown,* the present record fails to establish any correlation between relative sales and relative expenses.

*Id.*

■ The rule emanating from these decisions concerning the requisite connection between the expenses to be deducted from the import sales price and the underlying sales transactions appears to be that an importer may not prove that connection by merely multiplying the amount of its total expenses by the percentage that its sales of the subject merchandise make up of its total sales. The holdings do not establish any specific forms of proof to be required for allegedly deductible expenses but, rather, require a specific listing of expenses involved in, and added in the price of, sales of the particular products or line at issue, as opposed to a mere allocation of an abstract percentage of the seller's total expenses. It seems useful in this regard also to note the language of sub-paragraph (B) of paragraph (3) of the present statute which provides that the expenses and profit deduction shall be based upon the profit and general expenses of the importer involved,

> unless such profits and general expenses are inconsistent with those *reflected in* sales in the United States of imported merchandise of the same class or kind, in which case the deduction shall be based on the usual profit and general expenses *reflected in* [the latter] sales.

(Emphasis added.) The highlighted language in this subsection shows a concern of the drafters that the expenses to be

deducted should have been actually included, or reflected, in the sales price of the particular products at issue. It is in accord with this concern to require, as did the above decisions, that a more direct connection be established between the expenses and the sales or sales prices. Sub-paragraph (B) of paragraph (3) further provides, for purposes of applying the above adjustment,

> (i) the deduction made for profit and general expenses shall be based upon the importer's profits and general expenses, unless such profits and general expenses are inconsistent with those reflected in sales in the United States of imported merchandise of the same class or kind, in which case the deduction shall be based on the usual profit and general expenses reflected in such sales, as determined from sufficient information....

### b) *The expenses at issue* ·

■ The "connection" requirement from the above cases appears to be met in this case. Plaintiff has not based its claim for the general expenses deduction on the methodology found in the above decisions to be insufficient: plaintiff does not submit an expenses amount derived simply by multiplying its total expenses by an abstract figure representing the ratio of its U.S. sales of the oxygen analyzing equipment to its total sales of all products; instead, it submits expenses in rather specific categories, all of which could be related to its U.S. sale of the merchandise at issue. Defendant does not here, and did not at trial, contest the accuracy of these figures but apparently objects solely to the fact that they were not all listed in the category "Selling Expenses".

It may be wondered why plaintiff did *not* list the contested expenses in such a category. There does not, however, appear from the above decisions, a requirement that all deductible expenses be so labeled. Moreover, the specific language of the statute refers to "profit and *general* expenses" connected with U.S. sales of relevant products; even expenses categorized by an importer under that precise statutory language would not meet defendant's appar-

ent criterion that deductible expenses must be categorized as "selling expenses".

After the Court of Appeals's decision in *National Carloading*, the U.S. Customs Court, Appellate Term, in *U.S. v. Mitsui & Co.*, 70 Cust.Ct. 301, 359 F.Supp. 1398 (1973) reversed an earlier decision of the Customs Court which had accepted an importer's claim for a deduction from the United States price of $2.00 per item added to the sales prices of the subject merchandise for profit and general expenses. A manager of the importer testified at trial as follows concerning the method by which the importer arrived at the sum of $2.00 per item added to the sale prices of the merchandise as markup:

> Q.: Was there any reason why you selected two dollars?
>
> A.: There was no particular reason. I just felt that two dollars would be sufficient to cover our profit and whatever expenses are involved in this business.

70 Cust.Ct. at 309, 359 F.Supp. at 1405 (emphasis by Appellate Division). The Appellate Division, which had affirmed the Customs Court decision before the Court of Appeals decision in *National Carloading* was issued, thereafter reversed the trial court's acceptance of the deduction, on the basis of the appellate decision and stating:

> As in *National Carloading*, there is no evidence in this case of the *actual* profit and general expenses "incurred" in sales of [the product]. Nor is there any evidence of the "elements" of general expense covered by the $2.00 figure.

*Id.* (emphasis in original).

The $2.00 item in *Mitsui* may be contrasted with the disputed expenses in the present case. Those are:

1. salary and expenses for travel to the United States of Mr. Dudley Wright, president of Orbisphere;

2. costs for "U.S. accounting services", paid to the Peat Marwick company;

3. costs for "U.S. legal services", paid to Shearman & Sterling and Barnes, Richardson;

4. director's fees and expenses for travel to Geneva of Professor Richard P.

Feynman of Cal. Tech [apparently a member of Orbisphere's Board of Directors];

5. director's fees for Mr. Richard Alberding; and

6. expenses for "Geneva Based Travel in U.S." of Messrs. I. Bales, Dr. J. Hale, and B. Brinkers.

Plaintiff includes in its reply Memorandum an excerpt from the case *United States v. Alfred Dunhill of London, Inc.*, 32 CCPA 187 (1945), in which the CCPA states the following concerning the term "usual general expenses":

In our opinion the "usual general expenses" of a business are the expenses of doing business. This would include in addition to the cost and manipulation of materials, all salaries, wages and commissions, traveling expenses, advertising, rents, taxes on buildings, stationery, stenographic, telephone and telegraph expenses, costs of delivery, depreciation on plant and equipment, and other actual outlays.

Unlike the present case, *Dunhill* involved valuation on the basis of cost of production under section 402 of the prior Tariff Act, and the excerpt therefore may not be directly applicable on the present question; nevertheless it provides instruction, or at least context, for an interpretation of the phrase "general expenses" in the present deductive value framework, which measure is not dissimilar to that involved in *Dunhill*.

Based on the standards gleaned from these sources, the Court finds that the data submitted by plaintiff relating to its general expenses connected with its U.S. sales of the subject merchandise are adequate under the statute to require a corresponding reduction in the deductive value of that merchandise. Customs has presented no persuasive evidence or argument to the contrary. Accordingly, the Court orders that the deductive value computed by Customs for this merchandise be reduced by the amount of those expenses.

### 2. Profits Deduction

■ The defendant's argument against the deduction for profits on the U.S. sales of the imported merchandise is less persuasive than its argument against the expenses deduction. Defendant focuses on the testimony at trial, incorporated into the earlier opinion, that Orbisphere's U.S. sales offices were "cost centers", not "profit centers", in that the revenues from the U.S. sales, after being deposited in Orbisphere's U.S. bank accounts, were ultimately remitted to the Geneva headquarters, the U.S. offices keeping only amounts necessary to pay their expenses and overhead. In making its argument, however, defendant misconstrues the Court's recognition of this fact as a finding that *no profit was realized* on the sales. The Court did not make such a finding.

The same trial testimony relied upon by defendant for its argument also includes statements to the effect that profits were realized on the sales (Transcript at 66–67, 77). Indeed, there *must* have been such profits given the fact, relied upon by defendant, that all revenues *in excess of* costs and overhead were remitted to Geneva; the profits were profits of the company as a whole, not of individual sales offices. It may safely be assumed that the I.R.S. had no trouble locating those profits, as is confirmed by the testimony of plaintiff's witness Mr. Franklin that the profits were fully reported to the I.R.S. on the company's tax returns for the years in question. See *id.;* collective exhibits 6 and 7.

There being profits on the sales in question, it seems immaterial what the company chose to do with those profits, however circuitous may have been their flow and whatever may have been their ultimate resting place. The deduction for profits is provided not based on where the profits end up but in order to provide a value of the goods sold in the United States that approximates the cost of the goods before shipment, resale, and expenses associated therewith. Accordingly, it is clear that in this case plaintiff's profits on the sales in question should have been deducted from the deductive value of the merchandise.

## CONCLUSION

The Court finds that Customs acted improperly in refusing to reduce the deductive value of plaintiff's sales in question by amounts of the general expenses and profits identified by plaintiff. Customs has at no time questioned the genuineness or accuracy of the data submitted by plaintiff on these items, nor has it advanced any persuasive arguments or evidence of its own to justify its refusal to make the adjustments expressly prescribed by the statute. Therefore, Customs is hereby ordered to amend its previous calculation of the deductive value of the subject merchandise by subtracting therefrom amounts equal to plaintiff's expenses and profits discussed herein.